861 P.2d 275

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Edward HARRIS, Lesley Harris, and Lewis Toone, Defendants– Appellants.**

**No. 14291.**

Court of Appeals of New Mexico.

Sept. 8, 1993.

Tom Udall, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

C. Barry Crutchfield, Templeman & Crutchfield, P.C., Lovington, for defendants-appellants.

## OPINION

APODACA, Judge.

After a consolidated jury trial, Defendants appeal their convictions for conspiracy and attempt to commit a felony, fraud. The issue before us is whether the evidence of the out-of-court identification and in-court identifications of Defendants, as well as the evidence of Defendants' association, were the tainted result of an illegal stop and therefore inadmissible at trial. Because we hold that the trial court incorrectly applied the "probable cause" standard in determining the stop was illegal, we remand for a redetermination of whether the police officers' stop of Defendants was proper under the "reasonable, articulable suspicion" standard. If, on remand, the trial court determines the stop was lawful, Defendants' convictions are affirmed. On the other hand, if the trial court determines the stop was unlawful, Defendants are entitled to a new trial with the evidence of their out-of-court identification excluded. We also determine that, even if the stop was unlawful, the in-court identifications were properly admitted and would be admissible at a new trial, if one is held.

## FACTS

Chief of Police Marshall Newman of the Hobbs Police Department (Newman), who was driving an unmarked police unit, became suspicious of four persons in a car he observed near the First Interstate Bank (bank) in Hobbs. One of the car's occupants, later identified as Hulsey, exited the car and walked into the bank. Newman parked in a lot on the west side of the bank to observe any activities. After about thirty minutes, Newman observed Hulsey exit the bank and walk past the car. Neither Hulsey nor the car's occupants acknowledged one another. Because Newman suspected a possible bank robbery, he radioed for a marked police unit to stop the car to "find out who the individuals were."

It later developed that, while Hulsey was in the bank, the victim, an elderly man (Victim), was also in the bank. Victim testified that, before he had entered the bank, Defendant Lesley Harris asked Victim for directions in the parking lot of a local store, got into Victim's jeep, and began to talk about a woman. Another passerby, Defendant Toone, who supposedly was not acquainted with Lesley Harris, joined the conversation. Victim, Lesley Harris, and Toone then drove to a McDonald's restaurant in Victim's jeep. At the restaurant, Lesley Harris introduced Victim and Toone to Defendant Edward Harris. The four men began to talk about money. Defendants told Victim that he could double his money if he was able to come up with $28,000. Victim joined in the money-matching "bet."

Victim and Toone then went to Victim's house so that Victim could pick up $30,000 in certificates of deposit. After Victim arranged to meet Toone at a nearby meeting place, he cashed his certificates of deposit at the bank. Bank officials tried to convince Victim not to take the cash from the bank. Unpersuaded, Victim took the cash and told bank officials that he needed the cash for a "good deal." As a result of Victim's withdrawal and Hulsey's presence, concerned bank officials immediately reported the incident to the police. This information was communicated by police radio.

It was during this same period that Newman had called for a marked police unit to have the car stopped. After doing so, he heard the police radio dispatch concerning Victim's withdrawal of money. At that time, he put out a "be-on-the-lookout" bulletin for Hulsey. Newman then spotted Victim in the McDonald's parking lot and stopped to talk to him. Victim informed Newman of the arrangement he had entered into with Defendants. Newman then took Victim to the K-Mart parking lot, where the car had been stopped by other police officers. Another officer picked up

Hulsey and brought him to the K–Mart parking lot. Victim identified Defendants in the K–Mart parking lot.

Before trial, Defendants filed motions to dismiss and to suppress all "statements, evidence and material flowing" from the alleged illegal stop. The trial court denied the dismissal motions, but ruled that the stop of the car was made without probable cause and suppressed "all statements and personal property taken from or seized by the Hobbs Police Department...." At trial, Victim and other witnesses made in-court identifications of Defendants. Victim and other witnesses also pointed out Defendants as the individuals identified by Victim at the "show-up" stop in the K–Mart parking lot. Defendants objected to the identification and association evidence obtained at the K–Mart parking lot and to the in-court identification and association evidence. The trial court directed a verdict in favor of Hulsey and he is not a party to this appeal.

## DISCUSSION

At trial, Defendants contended that both the in-court and out-of-court identifications were tainted by the officers' unlawful stop of Defendants at the K–Mart parking lot. We address the evidence of each of the identifications separately. Before doing so, however, we initially address Defendants' contentions questioning the timeliness of the State's argument on appeal that the trial court erred in determining the stop was unlawful.

### 1. Trial Court's Suppression Order.

■ Defendants contend that any identification evidence is inadmissible because it is tainted by the illegal stop of the car. See Wong Sun v. United States, 371 U.S. 471, 484–86, 83 S.Ct. 407, 415–417, 9 L.Ed.2d 441 (1963). Although it did not initially appeal the trial court's pre-trial holding that the car stop was unlawful, the State now argues that the trial court's admission of this evidence at trial was proper because the stop was lawful. The State contends the trial court used the wrong standard—probable cause. Thus, the State contends, this Court, by applying the cor-

rect standard, can affirm the trial court's at-trial decision under the right-for-any-reason rationale. See State v. Lovato, 112 N.M. 517, 521, 817 P.2d 251, 255 (Ct.App.), cert. denied, 112 N.M. 388, 815 P.2d 1178 (1991). Defendants respond that the State is attempting to de facto appeal the trial court's pre-trial suppression ruling without complying with NMSA 1978, Section 39–3–3(B)(2) (Repl.Pamp.1991). Under Section 39–3–3(B)(2), Defendants claim, the State was required to appeal within ten days of the entry of the trial court's suppression order. Contending the State's request that this Court revisit the trial court's suppression order is thus improper, Defendants rely on Seaboard Fire & Marine Insurance Co. v. Kurth, 96 N.M. 631, 633 P.2d 1229 (Ct.App.1980), and Mabrey v. Mobil Oil Corp., 84 N.M. 272, 502 P.2d 297 (Ct. App.), cert. denied, 83 N.M. 740, 497 P.2d 742 (1972).

We agree with the State's argument on this threshold issue for two reasons. First, the State could not have appealed from the suppression order even if it had so desired. Section 39–3–3(B)(2) provides that the State can appeal "within ten days from a decision or order of a district court suppressing or excluding evidence ..., if the district attorney certifies to the district court ... that the evidence is a substantial proof of a fact material in the proceeding." Because the State did not intend to use at trial any of the physical evidence seized or statements made at the stop in the K–Mart parking lot, the evidence the suppression order expressly referred to, the State would have been unable to certify that the order suppressed evidence that was "a substantial proof of a fact material in the proceeding." See id. In fact, when at trial the State attempted to introduce the identification testimony, the trial court, in its ruling admitting the testimony, affirmed the State's belief that the evidence the State wished to admit was not included in the suppression order. Thus, the terms of Section 39–3–3(B)(2) did not permit the State to appeal the suppression order within ten days after the trial court's ruling.

Second, although the State is challenging the basic premise of the suppression order, that the stop was illegal, the State is not appealing the suppression order. Rather, it is responding to Defendants' argument in *their* appeal that the stop was unlawful and that, therefore, the trial court erred in deciding at trial to admit the identification evidence. *Mabrey* and *Seaboard Fire & Marine Insurance Co.*, which concerned attempted post-trial appeals of dispositive pre-trial orders, do not preclude this Court from considering the propriety of the trial court's *at-trial* decision to admit the identification evidence. Indeed, since the legality of the stop determines whether the trial court properly admitted the out-of-court identification evidence at trial, we necessarily consider the basis of the suppression order.

■ We agree with the State's contention that the trial court reviewed the stop using the incorrect standard. Although both Defendants and the State argued to the trial court that the appropriate standard was whether the officers had reasonable, articulable suspicion to stop Defendants, the trial court independently determined that the officers lacked probable cause to make the stop. Use of this standard was contrary to the applicable case law. Officers may briefly detain persons for investigatory purposes if the officers have reasonable suspicion based on articulable facts that the person has been or is presently engaged in the commission of a crime. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); *State v. Jones*, 114 N.M. 147, 150, 835 P.2d 863, 866 (Ct.App.), *cert. denied*, 114 N.M. 62, 834 P.2d 939 (1992). The United States Supreme Court has more recently reaffirmed the "reasonable suspicion" standard for investigatory stops in *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). In *Sokolow*, the Court emphasized the difference between "reasonable suspicion" and the "probable cause" needed to justify an arrest or search, stating that:

We have held that probable cause means "a fair probability that contraband or

evidence of a crime will be found," and the level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause.

*Id.* at 7, 109 S.Ct. at 1585 (citations omitted). Additionally, the Court stated that "'there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot.'" *Id.* at 9, 109 S.Ct. at 1586 (quoting *Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980) (per curiam)). We thus conclude that the trial court's application of the probable cause standard was erroneous.

Although the State urges us to determine as a matter of law that the stop was lawful by applying the appropriate standard, we decline to do so. Instead, we consider it appropriate to remand for the trial court's reconsideration of its order and for additional findings under the applicable law. *See State v. Baldonado*, 115 N.M. 106, 110, 847 P.2d 751, 755 (Ct.App.1992), *cert. denied*, 115 N.M. 145, 848 P.2d 531 (1993).

### 2. *The Out-of-Court Identification.*

■ On remand, if the trial court should determine that the stop was lawful, the evidence obtained as a result of the stop was properly admitted, and Defendants would not be entitled to a new trial. However, if the trial court should determine that the stop was not supported by reasonable, articulable suspicion and was therefore unlawful, the question of whether such unlawfulness precludes the out-of-court identification as evidence at a new trial must be addressed. Although Defendants contend that the evidence of both the in-court and out-of-court identifications are equally tainted and should have been suppressed, as we previously noted, we discuss them separately.

Defendants contend that the evidence of their identification and association in the K–Mart parking lot was as much the "fruit of the poisonous tree" as the physical evidence and the statements obtained as a result of the unlawful stop. Thus, they argue, the identification evidence also

should have been suppressed. *See Wong Sun*, 371 U.S. at 484–85, 83 S.Ct. at 350–351; *Jones*, 114 N.M. at 151, 835 P.2d at 867. We agree that, if the stop was unlawful, all evidence obtained as a result of the stop, including the evidence of Defendants' identification by Victim and their association at the K–Mart, should have been suppressed. *See Wong Sun*, 371 U.S. at 485–86, 83 S.Ct. at 350–351, (stating that testimony of matters observed and statements made during unlawful invasion have been suppressed); *United States v. White*, 549 F.Supp. 777 (N.D.Ill.1982) (identity of defendants secured by unlawful search inadmissible); *State v. Crook*, 93 Or.App. 509, 762 P.2d 1062 (1988) (illegal search of vehicle and seizure of picture used to identify defendant should have been suppressed).

The State contends that, even if the stop was unlawful, the evidence of Defendants' identification and association at the stop was admissible under the inevitable discovery doctrine. *See Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984) (holding that illegally obtained evidence should not be suppressed if prosecution can establish by a preponderance of the evidence that the information would have ultimately or inevitably been discovered by lawful means); *State v. Corneau*, 109 N.M. 81, 90, 781 P.2d 1159, 1168 (Ct.App.), *certs. denied*, 108 N.M. 668, 777 P.2d 907 (1989). However, unlike the situation in *Nix*, where search parties were actively searching the area in which the victim's body was located and thus would have found it despite the defendant's improperly obtained statements, the State in this case can only speculate that the two separate investigations would have coincided.

The facts show that, although Victim knew what Defendants looked like, he did not know Defendants' names or addresses. Additionally, the State concedes that none of the officers testified that they could have identified Defendants before the stop. As a result, we cannot determinatively conclude that the officers, even after talking with Victim, would have been able to locate, arrest, and identify Defendants. *Cf.*

*Corneau*, 109 N.M. at 90, 781 P.2d at 1168 (inevitable discovery doctrine pertains to evidence that was seized unlawfully but would have been seized independently and lawfully in due course). We consequently reject the State's argument that Defendants' identities would have been inevitably discovered.

For these reasons, we conclude that, if on remand the trial court determines that the stop of Defendants' car was unlawful, the evidence of the identification and association of Defendants in the K–Mart parking lot should have been suppressed, and Defendants are entitled to a new trial.

### 3. *The In–Court Identifications.*

■ Apart from the admission of evidence elicited at the show-up identification, the more difficult question is whether the in-court identifications of Defendants also should have been admitted. The answer to this question depends on how far the taint from the illegal stop flows. To assist us with this inquiry, we rely on *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). In *Crews*, the defendant was illegally arrested, taken to the police station and photographed. One victim identified the defendant from the photograph and later picked the defendant out of a lineup. *Id.* at 467, 100 S.Ct. at 1247. At trial, these pre-trial identifications were suppressed, but the victim's courtroom identification was admitted. *Id.* at 468, 100 S.Ct. at 1248. The United States Supreme Court concluded that the victim's in-court identification of the defendant was admissible. *Id.* at 477, 100 S.Ct. at 1253.

*Crews* noted that there are three aspects to a victim's in-court identification of an accused: (1) "the victim is present at trial to testify as to what transpired between [the victim] and the offender, and to identify the defendant as the culprit"; (2) "the victim possesses knowledge of and the ability to reconstruct the prior criminal occurrence and to identify the defendant from ... observations of [the perpetrator] at the time of the crime"; and (3) "the defendant is also physically present in the courtroom, so that the victim can observe ... and

compare [the defendant's] appearance to that of the offender." *Id.* at 471, 100 S.Ct. at 1249. In allowing the in-court identification in *Crews,* the Court concluded that none of the three aspects or elements noted above "has been come at by exploitation" of the violation of the defendant's Fourth Amendment rights. *Id.* at 471, 100 S.Ct. at 1249, (quoting *Wong Sun,* 371 U.S. at 488, 83 S.Ct. at 417).

We examine the facts in this appeal in light of the *Crews* elements. Considering the first element, the facts do not indicate that Victim's identity and his eventual co-operation with police was obtained as a result of the illegal stop. Rather, concerned bank officials notified police shortly after Victim's withdrawal, resulting in Newman's questioning of Victim. Before identifying Defendants at the parking lot, Victim told Newman of the money-making scheme. Therefore, police were aware of Victim's identity independently of the illegal stop. Victim's presence in the courtroom was thus not traceable to the Fourth Amendment violation under the first element.

Applying the second element, we cannot conclude that the illegal stop and show-up identification affected Victim's ability to relate accurate identification testimony. Victim's interaction with Defendants was substantial, recent, and before the illegal stop. There is no indication that Victim's ability to identify Defendants was in any way affected by the illegal stop. *See, e.g., Archuleta v. Kerby,* 864 F.2d 709, 711–12 (10th Cir.) (although show-up identification was unnecessarily suggestive, evidence of show-up identification as well as identification at trial was nevertheless admissible where the victims had ample opportunity to view the defendants at the time of the crime), *cert. denied,* 490 U.S. 1084, 109 S.Ct. 2108, 104 L.Ed.2d 669 (1989); *People v. Teresinski,* 30 Cal.3d 822, 180 Cal.Rptr. 617, 624, 640 P.2d 753, 760 (1982) (en banc) (stating that if the witness can rely upon his memory of the crime in order to identify the defendant, the witness's testimony is based on an adequate independent and untainted source); *State v. Moore,* 109 N.M.

119, 123, 782 P.2d 91, 95 (Ct.App.) (even if there has been an improper extrajudicial identification, this fact does not require the exclusion of an independent in-court identification that is not tainted by the prior identification), *certs. denied,* 109 N.M. 54, 781 P.2d 782 (1989).

Concerning Defendants' presence in the courtroom under the third element, we hold that the illegal stop in this case was not a bar to prosecution. *See Crews,* 445 U.S. at 474, 100 S.Ct. at 1251, (without more, fact that a defendant was illegally arrested will not bar a subsequent prosecution and is not a defense to a valid conviction); *Frisbie v. Collins,* 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952) (a defendant may be tried even though arrested illegally); *United States v. Humphries,* 636 F.2d 1172, 1181 (9th Cir.1980) (defendant's presence in court cannot be attacked as the fruit of an illegal arrest), *cert. denied,* 451 U.S. 988, 101 S.Ct. 2324, 68 L.Ed.2d 846 (1981); *State v. Ford,* 81 N.M. 556, 558, 469 P.2d 535, 537 (Ct.App.1970) (even if the defendant was brought to court illegally, the court still had jurisdiction to try him).

Additionally, we observe that the facts show the police were already suspicious of Defendants' car before the illegal stop. Newman had been following Defendants' car and ostensibly could have traced the identities of Defendants by a license plate check. Also, independent of the illegal stop, a radio dispatch resulted in Newman's talking with Victim about his money arrangement with Defendants. Thus, the officers were already gathering evidence, apart from the identity and association evidence obtained by any violation of Defendants' Fourth Amendment rights. We also consider persuasive that the facts do not show bad faith in the officers' act of stopping Defendants and bringing Victim to the show-up identification. *See, e.g., United States ex rel. Pella v. Reid,* 527 F.2d 380, 382–83 (2d Cir.1975); *United States v. Edmons,* 432 F.2d 577, 584 (2d Cir.1970) (when arresting officers deliberately violate the Fourth Amendment in order to exhibit a person before the victim, the resulting identification evidence exploits the

**240**

primary illegality and should be barred); *State v. Ponce,* 54 Or.App. 581, 635 P.2d 1042, 1045–46 (1981) (indicating that the flagrancy of police conduct can be considered in determining what must be shown as an intervening circumstance to dissipate the taint of an initial illegality), *petition denied,* 292 Or. 568, 644 P.2d 1129 (1982). For these reasons, we hold that the trial court properly admitted the in-court identifications and resultant association evidence.

Concerning Defendants' argument that their persons should be considered physical evidence, and therefore fruits of the illegal stop, Defendants did not raise this particular argument below. *See State v. Lucero,* 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct. App.1986) (to preserve an issue for appeal, the defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling on the issue).

**CONCLUSION**

In summary, we hold that the in-court identifications were not the result of exploitation of any violation of Defendants' Fourth Amendment rights. Consequently, that evidence was properly admitted at Defendants' trial. However, we remand to the trial court for reconsideration of the underlying basis for the suppression order under the appropriate legal standard. If the trial court determines that the stop was supported by reasonable, articulable suspicion and was therefore lawful, we hold that the evidence of Defendants' identification and association obtained as a result of the stop was properly admitted and their convictions are affirmed. If the trial court determines that the stop was unlawful, Defendants' convictions are reversed and a new trial shall be held. At a new trial, if any, the evidence of the out-of-court identification and association shall be excluded.

**IT IS SO ORDERED.**

BIVINS and ALARID, JJ., concur.