2008-NMCA-004

175 P.3d 333

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Edward McNEAL, Defendant–Appellee.**

` No. 26,158.

Court of Appeals of New Mexico.

Nov. 19, 2007.

Gary K. King, Attorney General, Santa Fe, NM, James W. Grayson, Assistant Attorney General, Albuquerque, NM, for Appellant.

John Bigelow, Chief Public Defender, Vicki W. Zelle, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

## OPINION

BUSTAMANTE, Judge.

{1} This matter comes before the Court on the State's interlocutory appeal from an order granting in part Defendant Edward McNeal's motion to suppress statements and physical evidence. *See* NMSA 1978, § 39–3–3(B)(2) (1972) (permitting the State to take an interlocutory appeal from an order granting a defendant's motion to suppress). In the district court, Defendant moved to suppress three types of evidence relevant to this appeal: (1) a duffel bag and its contents, (2) a shaving kit and its contents, and (3) statements he and his daughter made to the police. The district court denied his motion as to the duffel bag and granted it as to the shaving kit and the statements, believing these to be the fruit of a violation of Defendant's rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The State appeals from that portion of the order suppressing the shaving kit and the statements.

{2} In support of the district court's order, Defendant offers several alternative grounds for affirmance, including an argument that the evidence was properly suppressed since it is the fruit of the illegal search of his duffel bag. As noted above, the district court already rejected the argument that the search of the duffel bag was illegal. The State argues that because under Section 39–3–3, Defendant has no right at this stage in the proceedings to appeal the denial of his motion as to the duffel bag, Defendant cannot rely on this argument as a means to affirm the suppression of the shaving kit and the statements. As we may affirm the district court if it is right for any reason, we affirm because the search of the duffel bag violated Defendant's Fourth Amendment rights and hold that the contents of the shaving kit and the statements were rightly suppressed as the fruits of that violation.

## BACKGROUND

{3} Defendant was a passenger on a Greyhound bus that had stopped in Albuquerque for servicing and to pick up additional passengers. As Defendant and the other continuing passengers waited for the Albuquerque passengers to board, two Drug Enforcement Administration agents, James Flores and Mark Hyland, got on the bus. The agents were assigned to a full-time interdiction group that regularly boarded Greyhound buses to investigate narcotics trafficking. The agents had no information that there were any drugs on this particular bus; nor did they have any information that would lead them to suspect that any of its passengers were trafficking in drugs. Their intent was to engage in consensual encounters with the passengers by asking them to identify their bags and, in some cases, for consent to search the bags for narcotics, weapons, and large sums of cash.

{4} Agents Flores and Hyland walked to the back of the bus. Agent Hyland stood near the restroom, facing the front of the bus. Agent Flores began to walk from the back of the bus towards the front, asking passengers to identify their bags. When Agent Flores spoke to passengers, he typically said "This is [the] police, . . . can you identify any baggage that you may have on the bus?" or "Do you have any carry-on on the bus?" or "Police, can you identify any carry-on luggage?" Agent Flores testified that because the encounter was consensual, it was his understanding that the people on the bus had the right not to respond to his inquiries.

{5} At the end of Agent Flores's walk toward the front of the bus, there was a single bag that had not been identified by

any passenger. It was a Phoenix Suns duffel bag that was in the overhead bin one or two seats in front of Defendant. Agent Flores could not remember whether he simply grabbed the bag and removed it from the bus, or whether he asked people in the immediate area if it belonged to them. No one protested or otherwise attempted to claim the bag as Agent Flores removed it from the bus. Outside, Agent Flores opened the bag and found five ounces of crack cocaine, a Denver Broncos knit cap, a cell phone charger, and an electric razor charger, among other things.

{6} When Agent Flores got back on the bus, he noticed that Defendant, who was sitting close to where the bag had been, was wearing a Denver Broncos baseball cap. Based on Defendant's proximity to the former location of the duffel bag and the matching hats, Agent Flores asked if Defendant had a cell phone. Defendant said he did and produced the phone, which matched the charger found in the duffel bag. Agent Flores then asked Defendant to step off the bus. As Defendant and Agent Flores were leaving the bus, Agent Flores asked where Defendant was traveling from and to see Defendant's ticket. Defendant said he had been visiting his daughter in Phoenix, Arizona, and showed Agent Flores his ticket, which was under a name that was not his. Agent Flores asked for Defendant's daughter's phone number so he could verify Defendant's story about where he had been.

{7} Now off of the bus, Agent Flores asked Agent William Dorian, a narcotics agent with the New Mexico State Police who was also at the scene, to watch Defendant and the duffel bag while he called Defendant's daughter. As Agent Flores was speaking with Defendant's daughter, Agent Dorian asked if Defendant had any other luggage, and Defendant told him he had a shaving kit on the bus. Together, Agent Dorian and Defendant got back on the bus and retrieved Defendant's shaving kit. Defendant consented to a search of the kit, and Agent Dorian found an electric razor that matched the charger in the duffel bag. Agent Dorian told Defendant to step off the bus, and Agent Hyland, who had remained

on the bus during these events, followed. Defendant's daughter provided information that was contrary to what Defendant had told the agents about his travels. Based on these facts, Defendant was formally arrested.

{8} Prior to trial, Defendant moved to suppress the duffel bag and its contents, arguing that the bag was searched without a warrant in violation of his rights under the Fourth Amendment to the United States Constitution and under article II, section 10 of the New Mexico Constitution. He moved to suppress his statements to the police on the ground that he was not apprised of his *Miranda* rights when he was seized, and to suppress his daughter's statements and the shaving kit and its contents as the fruits of the *Miranda* violation. The district court denied the motion as to the Phoenix Suns duffel bag, concluding that Defendant had abandoned the bag, such that the agents could lawfully search it. The district court granted the motion as to Defendant's statements, his daughter's statements, and the shaving kit and its contents. The State appeals from the order suppressing Defendant's statements, his daughter's statements, and the shaving kit and its contents, arguing that the district court applied the wrong legal standard, since a seizure for Fourth Amendment purposes does not necessarily give rise to a defendant's Fifth Amendment right to *Miranda* warnings.

**DISCUSSION**

**Standard of Review**

{9} We review a suppression ruling to determine whether the district court correctly applied the law to the facts, viewing them in the manner most favorable to the prevailing party. *State v. Harbison,* 2007–NMSC–016, ¶ 8, 141 N.M. 392, 156 P.3d 30. Factual determinations are subject to a substantial evidence standard of review and application of law to the facts is subject to de novo review. *Id.*

**The District Court's Suppression Order**

{10} The State argues that the district court erred both in its determination that *Miranda* warnings were required once Defendant was told to step off of the bus and in its determination that the failure to pro-

vide such warnings required suppression not only of Defendant's statements, but of the fruits of those statements as well. We believe that the district court erred in concluding that, because Defendant was seized—without more—by the police when he was asked to step off the bus, he was entitled to *Miranda* warnings during the period between the request to leave the bus and Defendant's formal arrest. *Miranda* warnings are only required when a person is subject to an interrogation while in police custody. *State v. Munoz,* 1998–NMSC–048, ¶¶ 39–40, 126 N.M. 535, 972 P.2d 847. Custody is defined as either (1) a formal arrest, or (2) a "restraint on freedom of movement of the degree associated with a formal arrest." *Yarborough v. Alvarado,* 541 U.S. 652, 663, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) (internal quotation marks and citation omitted). Although a person is seized for Fourth Amendment purposes whenever an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen," *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), not all Fourth Amendment seizures rise to the level of "custody" for Fifth Amendment purposes, *Berkemer v. McCarty,* 468 U.S. 420, 436–42, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)(holding that questions asked during a traffic stop did not amount to custodial interrogation even though the defendant was seized for Fourth Amendment purposes and was not free to leave). *See State v. Wilson,* 2007–NMCA–111, ¶¶ 20–21, 142 N.M. 737, 169 P.3d 1184. Defendant cites no cases—and we have found none—holding that the type and manner of questioning he was subjected to constitute a custodial interrogation. Therefore, we agree with the State that the district court applied the wrong legal standard when it concluded that Defendant was entitled to *Miranda* warnings because Defendant was seized when he was taken from the bus.

## We May Affirm the District Court if It Is Right for Any Reason

{11} Defendant argues that even if the district court based its decision on a flawed legal analysis, this Court should uphold the order suppressing the shaving kit and the statements if it was right for any reason. *See State v. Gallegos,* 2007–NMSC–007, ¶ 26, 141 N.M. 185, 152 P.3d 828 (stating that an appellate court will affirm a district court's decision if it is right for any reason, so long as it is not unfair to the appellant). Defendant argues that the initial encounter with the agents on the bus was not consensual and that Defendant was seized without reasonable suspicion once Agent Flores made it clear (by taking the unclaimed bag) that passengers had to choose between cooperating with his request to identify their luggage and having their luggage seized; that the search of the duffel bag violated his right to be free of unreasonable searches and seizures because his silence in the face of police questioning did not constitute abandonment of his bag; that the agents did not have reasonable suspicion to single him out for questioning after they opened the duffel bag just because he was near where the bag had been and was wearing a Denver Broncos cap; that when Agent Flores reboarded the bus to question him about his cell phone, the questioning was coercive such that his consent to produce his phone was involuntarily given; that his detention ripened into a de facto arrest without probable cause when he was asked to get off the bus; that his consent to search the shaving kit was involuntary; and that he was in fact in custody for *Miranda* purposes when he was questioned outside of the bus.

{12} Defendant's first two arguments in support of affirmance challenge the warrantless search of the duffel bag and would have this Court uphold the district court's order suppressing the shaving kit and the statements made by Defendant and his daughter as the fruits of the illegal search. However, as the State notes, the district court already ruled that the search of the duffel bag was valid, and Defendant does not have the right to appeal that ruling at this point in the proceedings. The New Mexico statute governing appeals from the district court in criminal cases permits the State to take an interlocutory appeal "from a decision or order of a district court suppressing or excluding evidence ... if the district attorney certifies to the district court that the appeal is not

taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." § 39–3–3(B)(2). No such right is given to a defendant who wishes to take an interlocutory appeal from an order denying a motion to suppress. *See* § 39–3–3(A). As the State notes, because Defendant has no right to appeal an order denying his motion to suppress until after a final disposition of his case, he had no right to a cross-appeal after the State appealed that portion of the order granting Defendant's motion. *See, e.g., United States v. Valle Cruz,* 452 F.3d 698, 705 (8th Cir.2006) (holding that under federal statute allowing government to appeal from an order granting a defendant's motion to suppress evidence, the defendant has no right to cross-appeal). Nevertheless, we cannot agree with the State's claim that because Defendant could not appeal or cross-appeal from the district court's order denying his motion to suppress, it necessarily follows that he cannot rely on the illegality of the search of the duffel bag as the basis for upholding the district court's order regarding the shaving kit and the statements.

■ {13} A defendant may raise any argument fairly presented by the record in support of a district court's suppression order. *See, e.g., id.* (holding that even where a defendant has no right to appeal from that portion of an order denying his motion to suppress, when the government appeals the portion that granted the motion, a defendant may raise any arguments for affirmance that are supported by the record); *People v. Johnson,* 208 Ill.2d 118, 281 Ill.Dec. 38, 803 N.E.2d 442, 448–54 (2003) (same under Illinois law); *State v. Rush,* 174 Md.App. 259, 921 A.2d 334, 353–54 (Ct.Spec.App.2007) (same under Maryland law). Furthermore, this Court has permitted the State to rely on an argument—expressly rejected by the district court—that certain evidence below should *not* have been suppressed, in order to support its claim that the district court should be affirmed. *See State v. Harris,* 116 N.M. 234, 236–37, 861 P.2d 275, 277–78 (Ct. App.1993) (applying the right for any reason rule to permit the state to argue that the district court's refusal to suppress certain evidence should be affirmed because other evidence that the district court suppressed

should have been admitted). Therefore, because Defendant expressly raised the argument below, we determine that he may properly rely on a claim that the duffel bag was illegally searched as the basis for urging this Court to affirm the suppression of the shaving kit and the statements made by Defendant and his daughter.

## The Shaving Kit and the Statements Are the Fruits of the Illegal Search of the Duffel Bag

■ {14} The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Defendant argues that the conduct of the agents in getting on the bus and requiring passengers to respond to questions about their baggage amounted to either a temporary investigative seizure of his person without reasonable suspicion or, if he was not seized and was free to ignore Agent Flores's inquiries, then his refusal to respond to Agent Flores cannot be deemed an abandonment of his reasonable expectation of privacy in his bag. We agree that the conduct of the agents in this case violated Defendant's Fourth Amendment rights because Defendant's silence in the face of Agent Flores's inquiries cannot be deemed an abandonment of his privacy interest in his bag, and that the evidence suppressed by the district court was properly excluded as the fruit of the Fourth Amendment violation.

■ {15} As the Supreme Court has made clear, when the police are without reasonable suspicion to detain a passenger on a bus or to seize his luggage, the passenger is wholly at liberty to ignore police requests to answer questions or otherwise cooperate with the officers' drug interdiction efforts. *See Florida v. Bostick,* 501 U.S. 429, 435, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *see also Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion) (stating that when a person is approached by the police as part of drug interdiction efforts at an airport, the person "need not answer any question put to him; indeed,

he may decline to listen to the questions at all and may go on his way .... [h]e may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds" (citations omitted)). This appears to be just what Defendant did in this case.

{16} The evidence at the hearing on Defendant's motion to suppress indicated that Agents Flores and Hyland got on the bus intending to have what the agents deemed to be a consensual encounter with the passengers. Agent Flores acknowledged that because he had no factual information that would support a reasonable suspicion that the bus or any of its passengers were carrying narcotics, the people on the bus had the right not to respond to his inquiries. Agent Flores did not testify as to whether Defendant answered him when he asked Defendant to identify his bags, or if so, what Defendant's answer was. Agent Hyland testified that he did not hear Defendant respond to Agent Flores's inquiries. Several courts have held that a refusal to comply with an officer's direction to identify bags on a bus does not constitute abandonment of the bags. See Stanberry v. State, 343 Md. 720, 684 A.2d 823, 832–35 (1996) (holding that police officers' belief that bag on a bus was abandoned based on silence in the face of their inquiries about its ownership was unreasonable where all passengers on the bus had a right to refuse to answer any questions about the bag); see also United States v. Garzon, 119 F.3d 1446, 1452–53 (10th Cir.1997) (holding that a defendant did not abandon the bags he left on the bus when all bus passengers were asked to take their bags off the bus and defendant got off with one of his bags, but left two of his bags on the bus); United States v. Cuevas–Ceja, 58 F.Supp.2d 1175, 1190 (D.Or.1999) (holding that a defendant did not abandon her bag when she did not claim it when directed to do so by officers).

{17} We are aware that some courts have indicated that refusing to claim a bag when directed to do so by law enforcement constitutes abandonment, see, e.g., United States v. Fulani, 368 F.3d 351, 354 (3d Cir.2004) (stating that silence in the face of bus-wide ques-tioning regarding ownership of a bag constitutes abandonment); Garzon, 119 F.3d at 1452 (noting in dictum that the failure to respond to a direct question from a police officer might be construed as a disclaimer of ownership). We believe that such a conclusion is in conflict not only with the Supreme Court's statements regarding a person's rights when interacting with a police officer who has no reason to believe that he has done anything illegal, but also with the general rule that abandonment for Fourth Amendment purposes must be shown by "clear, unequivocal and decisive evidence," see State v. Celusniak, 2004–NMCA–070, ¶ 26, 135 N.M. 728, 93 P.3d 10 (internal quotation marks and citation omitted).

{18} Courts have found unequivocal evidence of abandonment when a person expressly states that he is not the owner of a bag. See, e.g., United States v. Ojeda–Ramos, 455 F.3d 1178, 1187 (10th Cir.2006); see also State v. Villanueva, 110 N.M. 359, 365, 796 P.2d 252, 258 (Ct.App.1990) (holding that a defendant had no reasonable expectation of privacy in a bag when he expressly denied having any luggage on the bus). We have no such evidence here. Although both Agent Flores and Agent Hyland testified that Agent Flores asked everyone on the bus about his or her luggage, neither agent testified as to Defendant's response. Where the State presented no evidence that Defendant expressly disclaimed ownership of the duffel bag, and where Defendant had a constitutional right to refuse to respond at all, we find unreasonable the agents' conclusion that the duffel bag was abandoned.

{19} Because the contents of the shaving kit and the statements made by Defendant and his daughter were the fruits of the unlawful search of the bag, we affirm the district court's order suppressing this evidence. See Wong Sun v. United States, 371 U.S. 471, 484–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (holding that both statements and physical evidence can be suppressed as the fruit of a Fourth Amendment violation); State v. Monteleone, 2005–NMCA–129, ¶ 16, 138 N.M. 544, 123 P.3d 777 (holding that consent to search is the fruit of a Fourth Amendment violation if there is no break in

the causal chain between the illegality and the consent). As we affirm on this basis, we need not address Defendants remaining arguments in support of the order below.

**CONCLUSION**

{20} We hold that Defendant retained a reasonable expectation of privacy in his duffel bag and that the warrantless search of the bag violated his Fourth Amendment rights. Defendant's consent to search his shaving kit and the items found in the kit were the tainted fruits of the illegal search, as were the statements Defendant and his daughter made to the police. Consequently, we affirm the district court's order suppressing the shaving kit and the statements. Because Defendant had no right to appeal from the district court's denial of his motion to suppress the duffel bag and its contents, we do not reverse the district court's order as to

that evidence. *See Johnson*, 208 Ill.2d 118, 281 Ill.Dec. 38, 803 N.E.2d 442, 454–56 (holding that the court of appeals erred when it reversed an interlocutory suppression ruling that the defendant had no right to appeal). Instead, Defendant may renew his motion to suppress in the district court, which is bound by this Court's decision regarding the legality of the seizure and search of the duffel bag.

{21} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and MICHAEL E. VIGIL, Judges.