2008-NMCA-102

189 P.3d 670

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Robert MORALES, Defendant–Appellee.**

**No. 26,825.**

Court of Appeals of New Mexico.

May 15, 2008.

Certiorari Denied, No. 31,152, June 26, 2008.

Gary K. King, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, NM, for Appellant.

R. Walton Weaver, Amarillo, TX, for Appellee.

## OPINION

KENNEDY, Judge.

{1} In this interlocutory appeal, the State contests the district court's grant of a suppression motion. The State argues that the district court erred in suppressing evidence seized from Defendant, further arguing that the seizure occurred pursuant to a lawful arrest. We affirm.

## FACTS AND PROCEDURAL HISTORY

{2} The material facts are undisputed. Defendant was arrested on April 21, 2005, and charged with accessory to distribution of a controlled substance, possession of a controlled substance (methamphetamine), possession of marijuana, and possession of drug paraphernalia. Before trial, Defendant 'filed an amended motion to suppress the evidence, basing his argument on violations of the United States Constitution and the New Mexico Constitution. A hearing on the suppression motion was held, and both parties stipulated to the use of testimony adduced during the preliminary hearing. No further evidence was taken.

{3} During the preliminary hearing, Agent Bucksath testified for the State. His testimony indicated that a few days prior to Defendant's arrest, Agent Bucksath set up a drug buy with B.J. Cisneros. The deal was set up for April 21, 2005. A total of eight officers were present as part of an arrest team for the drug buy. When Cisneros arrived for the arranged meeting, he had two other people in the vehicle with him, including Defendant, who was seated behind Cisneros, who drove.

{4} Cisneros left his vehicle, entered Agent Bucksath's vehicle, and made the deal with Agent Bucksath. Agent Bucksath then made a call, ostensibly to procure the remainder of the money he owed to Cisneros but which actually indicated to the arrest team that an arrest could be made. They came to the scene once the signal was given. Both Defendant and the other passenger were detained.

{5} Officer Gore also testified at the preliminary hearing as follows. Prior to the meeting with Cisneros, the arrest team was given orders to secure and handcuff all of the individuals in the vehicle. Once the signal was given to arrest the people from Cisneros' vehicle, Officer Gore positioned his vehicle to block in the vehicle containing Defendant. Defendant remained in the vehicle, and Gore noticed him moving around. Gore also noticed another individual standing by the passenger's side of the vehicle, and a third who appeared to have attempted to run. The State does not rely on Defendant's movement, or on the other individuals' potential or apparent interests in fleeing, as bearing on probable cause in this case.

{6} Officer Gore approached the vehicle and ordered Defendant to show his hands and exit the vehicle. Defendant was immediately placed face-down on the ground, handcuffed, and searched. Officer Gore found methamphetamine, marijuana, rolling papers, and five hundred fourteen dollars in cash in one of Defendant's pockets.

{7} Defendant filed a motion to suppress the evidence. After a hearing, the district court granted the motion, stating that the evidence taken from Defendant was "unlawfully obtained" and should be suppressed. The State filed a timely appeal.

## DISCUSSION

### Standard of Review

{8} In reviewing the grant of his suppression motion, we will view the facts in the light most favorable to Defendant and determine whether the law was correctly applied to the facts. *State v. Hinahara,* 2007–NMCA–116, ¶ 7, 142 N.M. 475, 166 P.3d 1129, *cert denied,* 2007–NMCERT–008, 142 N.M. 435, 166 P.3d 1089; *State v. Joe,* 2003–NMCA–071, ¶ 6, 133 N.M. 741, 69 P.3d 251. Our review is de novo because issues involving constitutional rights, such as search and seizure cases, are mixed questions of fact and law. *State v. Williams,* 2006–NMCA–062, ¶ 6, 139 N.M. 578, 136 P.3d 579; *State v.*

*Hernandez*, 1997–NMCA–006, ¶ 18, 122 N.M. 809, 932 P.2d 499.

**Warrantless Arrest and Motion to Suppress**

{9} On appeal, the State seeks to validate the search of Defendant, arguing that it was a search incident to Defendant's arrest and an exception to the warrant requirement. The State argues that there was probable cause to arrest Defendant based on the facts that were brought out in the preliminary hearing as set out earlier in this opinion. The State did not present further testimony to implicate Defendant. The State does not argue that the arrest of Defendant was justified based on exigent circumstances. The State appears in essence to want to bootstrap the magistrate judge's probable cause determination at the preliminary hearing, which bound Defendant over for trial, into justification for the arrest of Defendant on the charge on which Defendant was bound over. The State's approach is problematic, as we now discuss. The State bases its argument for the validity of the arrest on the charge of accessory to distribution of a controlled substance. The State's argument puts the cart before the horse. The issue is whether the officers had probable cause to arrest Defendant. Defendant argues that probable cause for the arrest did not exist, and because the arrest and search were therefore illegal, the fruits of the search were properly suppressed. To justify a warrantless arrest, probable cause is required. *See Campos v. State*, 117 N.M. 155, 156, 870 P.2d 117, 118 (1994). Exigent circumstances is not at issue in this case.

{10} "Both the Fourth Amendment to the United States Constitution and Article II, Section 10, of the New Mexico Constitution protect the right of the people to be free from unreasonable searches and seizures." *State v. Gutierrez*, 2004–NMCA–081, ¶ 6, 136 N.M. 18, 94 P.3d 18. When a seizure occurs without a warrant, it is presumed unreasonable, and the "State has the burden of showing that the search or seizure was justified by an exception to the warrant requirement." *Id.; accord State v. Weidner*, 2007–NMCA–063, ¶ 6, 141 N.M. 582, 158 P.3d 1025. In

*Campos*, our Supreme Court extended greater protection to persons subjected to warrantless public arrests than is afforded under the United States Constitution. 117 N.M. at 158, 870 P.2d at 120. "For a warrantless arrest to be reasonable [under the New Mexico Constitution] it must be based upon both probable cause and sufficient exigent circumstances." *Id.* at 156, 870 P.2d at 118. If the police did not have probable cause to arrest Defendant, then under either the state or federal constitution the arrest was illegal, and the evidence found on Defendant was properly suppressed as "fruit of the poisonous tree." *State v. Hawkins*, 1999–NMCA–126, ¶ 16, 128 N.M. 245, 991 P.2d 989 ("The 'fruit of the poisonous tree' doctrine bars the admission of evidence obtained after an illegal arrest or detention[.]" (internal quotation marks and citation omitted)).

**Was the Arrest Based on Probable Cause?**

{11} "An officer has probable cause to arrest when the facts and circumstances within the officer's knowledge are sufficient to warrant the officer to believe that an offense has been or is being committed." *State v. Granillo–Macias*, 2008–NMCA–021, ¶ 9, 143 N.M. 455, 176 P.3d 1187. "In reviewing the evidence supporting probable cause, each case stands on its own facts; there is no one set of circumstances required for probable cause." *Id.* (alteration omitted) (internal quotation marks and citation omitted).

{12} We address whether Defendant's conduct was sufficient to establish probable cause to justify his arrest for accessory to the distribution of a controlled substance. The State argues that Defendant was arrested for his participation in the drug transaction and that the arrest was based on probable cause to believe that Defendant committed the crime of accessory to the distribution of a controlled substance, a felony offense.

{13} The pre-arranged order to secure and handcuff all persons present was in place and executed as planned. Was Defendant, by sitting in the back seat, committing a violation of the Controlled Substances Act, as an accessory to or conspirator in the distribution

of methamphetamine? The testimony does not take us in that direction. Defendant's location in the vehicle was not a factor in the decision to arrest him, nor was any observation of his behavior. He was arrested, so the evidence informs us, because of a pre-arranged order among the officers to arrest everybody in the vehicle that Cisneros drove. In order to establish the particularized suspicion as to Defendant, the State relies solely on his presence in the vehicle that driver Cisneros left in order to transact his business. We hold that, under the circumstances of the case, this is not enough.

{14} "[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). Rather, "some additional circumstances from which it is reasonable to infer participation in a criminal enterprise must be shown." *United States v. Burrell*, 963 F.2d 976, 986 (7th Cir.1992) (internal quotation marks and citation omitted). "One important consideration in assessing the significance of the association is whether the known criminal activity was contemporaneous with the association. Another is whether the nature of the criminal activity is such that it could not normally be carried on without the knowledge of all persons present." *United States v. Hillison*, 733 F.2d 692, 697 (9th Cir.1984) (citations omitted).

> Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.

*Ybarra*, 444 U.S. at 91, 100 S.Ct. 338.

{15} In *United States v. Di Re*, 332 U.S. 581, 593, 68 S.Ct. 222, 92 L.Ed. 210 (1948), the United States Supreme Court held that it is "farfetched" to assume one is a criminal, even when accompanying a criminal to a crime rendezvous, "when the meeting is not secretive or in a suspicious hide-out but in broad daylight, in plain sight of passersby, ... and where the alleged substantive crime is one which does not necessarily involve any act visibly criminal." Furthermore, "[p]resumptions of guilt are not lightly to be indulged from mere meetings." *Id.* As presented, this case is almost indistinguishable from *Di Re*. The record here does not reveal whether the drugs that the driver sold had been accessible or even visible to the other occupants of the vehicle, including Defendant. The record does not tell us if Defendant was in a position to see the driver's actions in the other vehicle or to recognize them as a drug transaction. Thus, there exists nothing save argument to establish Defendant's awareness that such a transaction was occurring. In *United States v. Chadwick*, 532 F.2d 773, 784 (1st Cir.1976), *aff'd on other grounds*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the court held that an act of picking up suspected drug traffickers at a train station and helping the suspected traffickers load a footlocker, later determined to hold contraband, did not, without more, establish probable cause. "Association with known or suspected criminals does not, in and of itself, establish probable cause." *Chadwick*, 532 F.2d at 784.

{16} Because probable cause must be particularized to each individual, it is a difficult task to establish precise factors that would be sufficient to create an inference of participatory involvement. Other cases suggest what additional factors might be determinative of such involvement. In *United States v. Simmons*, 918 F.2d 476, 478, 482–83 (5th Cir.1990), the court held that when both the quantity of cocaine found on a defendant's travel companion indicated an intention to distribute and the defendant himself exhibited suspicious behavior, such as backing up, zipping his jacket, and folding his arms across his chest, the police had probable cause for an arrest.

{17} In *United States v. Capers*, 685 F.2d 249, 250 (8th Cir.1982), the defendant was in the company of a person, Yancy, that the police were investigating. The police arrived at Yancy's house and were admitted by his ex-wife, who told them that Yancy slept in the basement and was accompanied by another individual, and that Yancy and that

individual were out. *Id.* The police proceeded to the basement, where they discovered a balance scale, a cocaine consumer's handbook, drug paraphernalia, white powdery substances, and a gun. *Id.* When Yancy and the defendant arrived at the house, they were detained and searched. *Id.* The Eighth Circuit held that the defendant's presence "at the scene where a search warrant was being executed, standing alone, would not establish probable cause to arrest." *Id.* at 251. However, additional information obtained by the police "strongly indicated that a person connected with the drugs, drug paraphernalia and the firearm found in the basement was out with Yancy and that this person was likely to return." *Id.* Given the additional information, there was a strong probability that the person Yancy was out with was engaged in illegal conduct, and thus the police had probable cause to arrest that person when it was he who returned with Yancy. *Id.* at 251–52.

{18} In *Maryland v. Pringle,* 540 U.S. 366, 371–72, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), the Supreme Court held that the police had probable cause to arrest the defendant based on the officer's belief that the defendant had committed a crime based on his presence in a car in which cocaine was found hidden when all of the occupants denied knowing whose it was. We distinguish *Pringle* on grounds that, under the federal constitution, a warrantless arrest is supported by probable cause when a felony or a misdemeanor is committed in the presence of an officer. *Id.* at 369–70, 124 S.Ct. 795. Probable cause in *Pringle* existed because of the presence of cocaine in the car and the universal denials by its occupants, leading the officer to believe that a felony had been committed by at least one of them. *Id.* at 370, 124 S.Ct. 795. The Court in *Pringle* stated that it was an "entirely reasonable inference ... that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine." *Id.* at 372, 124 S.Ct. 795. No such connection exists here. The drug sale took place elsewhere, and Defendant's mere presence in a vehicle which the driver left to make the drug sale is insufficient to establish probable cause as a matter of law. While it is tempt-

ing to implicate Defendant in Cisneros' crime, the evidence concerning Defendant is just too thin to do so.

{19} The State seems to put stock in *Commonwealth v. Fernandez,* 57 Mass.App.Ct. 562, 784 N.E.2d 668 (2003), for the proposition that it is reasonable to assume that a drug dealer would not allow a person not associated with the business to be in the car from which the dealer sold drugs. However, this somewhat reasonable proposition is based on far more fact than the scanty evidence provided us in this case. Most notably in *Fernandez,* the drugs were sold from the car in which that defendant was a passenger in the front seat. Neither fact describes the case here. As we mentioned above, there exists no evidence for us to consider that the Defendant had seen any drugs possessed by Cisneros or had any knowledge of what Cisneros was up to when he left to go to another vehicle—about which we know even less concerning what Defendant may have seen from his rear seat. In *Fernandez,* the car itself was the "store from which a retail trade in [drugs] was being conducted," and the defendant in *Fernandez* was seated in the front seat alongside the seller during the transactions. *Id.* at 671.

{20} The arresting officer in this case did not articulate facts sufficient to support probable cause in this warrantless arrest. Defendant was surrounded by officers at the time of his arrest. Defendant complied with Officer Gore's demands to show his hands and exit the vehicle. Prior to his arrest, Defendant had not made any furtive or sudden movements, nor did he exhibit any nervousness or otherwise potentially suspicious behavior. He made no statements to Officer Gore, nor was he implicated in the conspiracy by Cisneros. Based on the lack of probable cause or exigent circumstances to make the arrest lawful, we hold that the evidence was properly suppressed and affirm the district court. The facts of this case create neither an "inference of participation in [a] conspiracy" nor probable cause that Defendant committed a felony offense. *Di Re,* 332 U.S. at 593, 68 S.Ct. 222. We cannot hold that the arrest of Defendant, being neither exigent

nor supported by probable cause, was reasonable in this case.

## CONCLUSION

{21} We affirm the district court's grant of Defendant's motion to suppress, holding that there was not probable cause to support Defendant's warrantless public arrest. Having based our conclusion that there was no probable cause to arrest defendant on the testimony presented in the preliminary hearing, the perspicacious reader might wonder if binding Defendant over for trial might similarly suffer from the lack of probable cause. First, the question is not asked in this appeal. *See, e.g., State v. Staples,* 98 N.M. 540, 541, 650 P.2d 824, 825 (1982). Second, the scope of inquiry and factual quanta for evaluating the probable cause, sufficient to justify arrest on one hand and to bind over for trial on the other, may differ.

{22} Accordingly, we affirm the district court's suppression of the evidence obtained by searching Defendant incident to his illegal arrest and remand this case for further proceedings in accord with this decision.

{23} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN SUTIN, Chief Judge and CYNTHIA A. FRY, Judge.