2008-NMCA-160

197 P.3d 1079

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**William MORAN, Defendant–Appellant.**

No. 27,303.

Court of Appeals of New Mexico.

Oct. 30, 2008.

298

Gary K. King, Attorney General, Santa Fe, NM, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

Hugh W. Dangler, Chief Public Defender, J.K. Theodosia Johnson, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

ALARID, Judge.

{1} This case requires us to examine the scope of the "plain view exception" to the warrant requirement of the Fourth Amendment to the United States Constitution and article II, section 10 of the New Mexico Constitution. In the present case, law enforcement officers executing a concededly valid warrant authorizing the search of Defendant's home for evidence of criminal sexual penetration (CSP) called in a conservation officer to conduct an investigation into possible violations of game and fish laws. We reject the State's argument that the conservation officer's entry into Defendant's home to look for evidence of violations of game and fish laws and the conservation officer's subsequent warrantless seizure of various items of Defendant's personal property were legitimate extensions of the plain view observations of the officers executing the search warrant. We hold that the conservation officer entered Defendant's home unlawfully and that the items of personal property seized by the conservation officer are the fruits of this unlawful entry. We therefore reverse the order of the district court denying Defendant's motion to suppress.

## BACKGROUND

{2} Defendant was charged by criminal complaint with thirteen counts of misdemeanor unlawful possession of parts of protected game animals in violation of NMSA 1978, Section 17-2-7(1979). Defendant filed a motion to suppress various items of personal property that had been seized from within Defendant's home by a conservation officer [1] in the course of an investigation into possible violations of game and fish laws.

{3} The district court held an evidentiary hearing on Defendant's motion. The evidence presented at the evidentiary hearing, viewed in the light favorable to the district court's ruling,[2] establishes the following operative facts. On October 7, 2004, Deputy Braziel of the Otero County Sheriff's Department was assisting two other officers in executing a search warrant. The warrant authorized a search of Defendant's home for evidence of criminal sexual penetration. The warrant specified the following items as subject to seizure: "indicia of residency," prescription bottles, couch cushions, a dark comforter, green men's underwear, and "video/photographic evidence of the interior/exterior of the home." As he approached Defendant's home, Deputy Braziel observed weathered animal skulls and antlers of indeterminate age displayed on the outside of Defendant's home. Defendant was not at home when Deputy Braziel and the other officers executing the warrant entered his home and began executing the search warrant. Once inside Defendant's home, Deputy Braziel observed more animal skulls and antlers displayed on the walls or lying out in the open. Deputy Braziel believed that New Mexico game and fish laws generally require that a tag issued by the Game and Fish Department be directly attached to killed game or game animal parts. None of the skulls and antlers observed by Deputy Braziel inside Defendant's home had a tag directly attached. Deputy Braziel radioed for assistance in determining whether Defendant was in possession of parts of game animals in violation of New Mexico game and fish laws. Ty Jackson, a conservation officer employed

1. The powers and duties of conservation officers are set out at NMSA 1978, § 17-2-19 (2001).

2. On appeal from an order denying a motion to suppress, we view the evidence in the light most favorable to the prevailing party. *State v. Lopez*, 2005-NMSC-018, ¶¶ 9, 22, 138 N.M. 9, 116 P.3d 80.

by the New Mexico Game and Fish Department, responded to Deputy Braziel's request for assistance. Officer Jackson testified that when he arrived at Defendant's house, Defendant was not at home. Officer Jackson did not have a warrant authorizing him to enter Defendant's home without Defendant's consent to search for and seize evidence of violations of game and fish laws. Officer Jackson entered Defendant's home and began an investigation into possible violations of game and fish laws. In the course of his investigation, Officer Jackson walked around inside Defendant's home, observing a number of skulls and antlers that were displayed on walls or stored in the open. According to Officer Jackson, Defendant returned about twenty minutes after Officer Jackson arrived. At first, Defendant said he had nothing to hide. Officer Jackson went outside, apparently to call in to obtain advice on whether he needed a search warrant. Officer Jackson spoke to a deputy district attorney, who told Officer Jackson that he did not need a warrant to seize the game animal parts because they were contraband in plain view. While Officer Jackson was outside, Defendant spoke by phone with his attorney. When Officer Jackson attempted to re-enter Defendant's home, Defendant told Officer Jackson that he was refusing consent. Officer Jackson re-entered Defendant's home and continued his investigation as the other officers proceeded with the execution of the warrant. Deputy Braziel showed Officer Jackson a cougar pelt that Deputy Braziel had found stored in an opaque trash bag. Officer Jackson questioned Defendant about the game animal parts that Officer Jackson had observed while inside Defendant's home. Defendant produced a receipt for a set of elk antlers and a license, but no tag, for one of the bear skulls, but was unable to produce tags or other documentation establishing his lawful possession of a number of game animal parts. Officer Jackson seized various game animal parts displayed or stored within Defendant's home for which Defendant could not produce tags or other documents establishing lawful possession. Officer Jackson did not seize any of the weathered skulls and antlers displayed on the exterior of Defendant's home because he could not be sure due to their weathered condition whether they had been taken before game and fish laws imposed a tagging requirement. The seized game animal parts provided the principal physical evidence supporting the thirteen counts of misdemeanor unlawful possession of game animal parts.

{4} In support of his motion to suppress, Defendant argued, inter alia, that the search went beyond the scope of the warrant, which was limited to certain items relating to alleged criminal sexual penetration, and that the plain view doctrine was inapplicable because the officers executing the warrant were sufficiently unsure of the incriminating nature of the animal parts and they called in Officer Jackson to determine whether Defendant was in violation of game and fish laws. Defendant pointed out that "there is no blanket law which makes the mere possession of deer or elk antlers illegal, as distinguished from possession of an illegal drug or explosive device." Defendant argued that the "Game and Fish Conservation Officer had no authority to search the premises under color of the Sheriff Department search warrant" and that "the search and seizure of the game items by the conservation officer was done without a warrant and in violation of state and federal constitutional provisions that prohibit warrantless searches and seizures."

{5} The district court denied Defendant's motion to suppress in a written order containing the following findings of fact and conclusions of law.

1. Pursuant to the "police team concept", Deputy Braziel was permitted to call in Officer Jackson, New Mexico Department of Game and Fish, to assist in investigating [Deputy] Braziel's perception of apparently illegal game while Braziel was at the [d]efendant's house still executing a search warrant.

2. All items seized, with the exception of the cougar kitten pelt, were in plain view upon entry into the residence, either hanging on walls or on open shelves.

3. The cougar kitten pelt was observed by Deputy Braziel while he was in a closet and looked inside a closed, opaque trash bag.

4.  The search warrant authorized officers to look for a variety of things that could be concealed in a variety of places, including a bag in a closet.

5.  Deputy Braziel was permitted to display the pelt to Officer Jackson.

6.  None of the items seized displayed the required tag. [Section] 19 NMAC 31.10.15 C. (3)(a). Nor did the defendant have any type of sales receipts or other documentation for any of the seized items.

7.  New Mexico law creates a presumption that possession of the seized game parts is illegal without a tag or other listed documentation, [NMSA 1978,] [Section] 17–3–33 [ (1979) ], and there is an obligation to produce the tag or documentation upon request. The defendant could not produce a tag or documentation for any of the seized items.

8.  Based on § 17–3–33, the items seized were prima facie illegal and subject to seizure under the plain view exception.

9.  The items were also subject to seizure under the plain view exception when the defendant could not produce any tags or other documentation.

Following the denial of his motion to suppress, Defendant entered a conditional plea of no contest to four counts of misdemeanor unlawful possession of game animal parts, reserving the right to appeal the denial of his motion to suppress.

## DISCUSSION

{6} Appellate review of a district court's denial of a motion to suppress evidence presents a mixed question of law and fact: facts are reviewed under a deferential substantial-evidence standard, while the application of law to the facts is reviewed de novo. *State v. Lowe*, 2004–NMCA–054, ¶¶ 8–9, 135 N.M. 520, 90 P.3d 539.

{7} Officer Jackson's entry and search of Defendant's home implicated important individual privacy interests protected by the Fourth Amendment to the United States Constitution and article II, section 10 of the New Mexico Constitution. Our Supreme Court has observed that "[t]he privacy of a home is afforded the highest level of protection by our state and federal constitutions." *State v. Nyce*, 2006–NMSC–026, ¶ 12, 139 N.M. 647, 137 P.3d 587. "An officer's warrantless entry into a person's home is the exact type of intrusion against which the language of the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution is directed." *State v. Gutierrez*, 2008–NMCA–018, ¶ 16, 143 N.M. 422, 176 P.3d 1154.

{8} In the absence of circumstances falling within an established exception to the warrant requirement, a search warrant must authorize an entry into a private residence to seize evidence of crimes. The warrant must be issued by a neutral and detached magistrate who has determined that there is probable cause to believe that evidence of criminal activity described with particularity will be found on the premises designated in the warrant. *Nyce*, 2006–NMSC–026, ¶ 9, 139 N.M. 647, 137 P.3d 587; *State v. Morales*, 2008–NMCA–102, ¶ 10, 144 N.M. 537, 189 P.3d 670. In the context of investigations into violations of game and fish laws, the constitutional warrant requirement is reinforced by Section 17–2–19(B), which provides that "any search warrant shall issue upon a written showing of probable cause, supported by oath or affirmation, describing the places to be searched or the persons or things to be seized."

{9} There is no dispute that Deputy Braziel and the other officers executing the warrant were legitimately present within Defendant's home to search for and seize items described in the search warrant. However, there also is no dispute that the physical evidence that Defendant sought to suppress was seized by Officer Jackson in the course of an investigation into possible violations of game and fish, not by the officers executing the warrant, and that the items seized by Officer Jackson as evidence of violations of game and fish laws were not described in the search warrant and were not related to the sex offense under investigation by the officers executing the warrant. The State acknowledges that the items seized by Officer Jackson were seized without a warrant, that warrantless seizures are presumed to be unreasonable, and that the State bears the bur-

den of demonstrating that the seizure of the antlers and other game animal parts fell within an exception to the warrant requirement. On appeal, the State relies solely on the "plain view exception" to justify Officer Jackson's warrantless seizure of various game animal parts.

According to our Supreme Court,

[u]nder the plain view exception to the warrant requirement, items may be seized without a warrant if the police officer was lawfully positioned when the evidence was observed, and the incriminating nature of the evidence was immediately apparent, such that the officer had probable cause to believe that the article seized was evidence of a crime.

*State v. Ochoa*, 2004–NMSC–023, ¶ 9, 135 N.M. 781, 93 P.3d 1286. Defendant argues that the incriminating nature of the game animal parts would not have been "immediately apparent" to any lawfully positioned officer. We agree.

{10} Taking and possession of game within New Mexico is lawful when done in compliance with regulations adopted by the Game Commission. Section 17–2–7. The Game Commission has promulgated regulations permitting the hunting of each of the species of game animals, the parts of which Deputy Braziel observed prior to calling in Officer Jackson. *See generally* 19.31.14 NMAC (2007) (listing superceded regulations governing hunting of big game, including bear, cougar, deer, and elk). The existence of regulations authorizing the hunting and possession of bear, cougar, deer, and elk bring the hunting trophies observed by Deputy Braziel within the principle that "mere suspicion about an ordinary object, which has common, non-criminal uses, will not support probable cause for its seizure." *Ochoa*, 2004–NMSC–023, ¶ 14, 135 N.M. 781, 93 P.3d 1286.

{11} The State argues that the hunting trophies observed by Deputy Braziel are taken outside *Ochoa's* principle that "mere suspicion about an ordinary object, which has common, non-criminal uses, will not support probable cause for its seizure," by operation of the following statute.

The possession of game or fish at any time unaccompanied by a proper and valid license, game tag, certificate or permit or invoice as provided in Chapter 17 NMSA 1978, shall be prima facie evidence that such game or fish was unlawfully taken and is unlawfully held in possession, and it shall be the duty of every person having possession or control of game or fish to produce the proper license, game tag, certificate, permit or invoice when one is required by Chapter 17 NMSA 1978 on demand of any officer[.]

Section 17–3–33. As we explain, the State's reliance on Section 17–3–33 is misplaced under the facts of the present case.

{12} Officer Jackson testified that under the Game Commission's interpretation of game and fish laws, game parts displayed or stored *within a home* are not considered "unaccompanied" by required documentation of lawful possession as long as the documentation is available and can be produced upon request. This reading seems to us to be consistent with the plain meanings of "unaccompanied" and its root, "accompany." *Merriam–Webster's Collegiate Dictionary* 7, 1279 (10th ed.2002). Further, tags are not the only form of documentation recognized by game and fish laws. Section 17–3–33 itself refers to licenses, certificates, permits, and invoices, in addition to tags. Officer Jackson testified that a receipt issued by a conservation officer can constitute proper proof of lawful possession. An examination of the Game Commission regulations establishes that game animal parts purchased from a private person taking the game animal parts need not be tagged; rather, the purchaser's proof of lawful possession consists of a written statement by the person who took the game animal parts establishing that the game animal parts were lawfully taken. 19.31.10.9(B) NMAC (2007). As we read Section 17–3–33, the presumption of unlawful possession on which the State relies does not arise unless and until the investigating officer has probable cause that the game animal parts are unaccompanied by proper documentation. Since a tag is not the only form of documentation recognized by game and fish laws, and since a tag, even when required, need not be directly affixed to game animal parts stored or displayed

within a home, a reasonable officer with a working knowledge of game and fish laws would not have assumed that the game animal parts visible within Defendant's home were "unaccompanied" by proper documentation merely because they were untagged. Obviously, there were many places within his home where Defendant might have stored for safekeeping the various documents establishing his lawful possession of game animal parts. A reasonable officer in Deputy Braziel's position could have had no more than "mere suspicion about ... ordinary object[s], which ha[ve] common, non-criminal uses." *Ochoa*, 2004–NMSC–023, ¶ 14, 135 N.M. 781, 93 P.3d 1286. Stated in the language of the plain view exception, it could not have been "immediately apparent" to an officer entering Defendant's home in Defendant's absence that Defendant's possession of game animal parts was unlawful. Therefore, Deputy Braziel could not have seized the game animal parts under the plain view exception. Since Deputy Braziel could not have seized the game animal parts under the plain view exception, he could not have delegated to Officer Jackson an authority that he himself lacked. *Cf. State v. Carter*, 88 N.M. 435, 436–37, 540 P.2d 1324, 1325–26 (Ct.App.1975) (permitting a police officer in one jurisdiction to arrest the defendant based on a request from an officer in another jurisdiction, provided that the officer in the other jurisdiction had probable cause). Indeed, in view of Officer Jackson's knowledge of game and fish laws, it should have been even clearer to Officer Jackson that the information available to the executing officers did not provide probable cause to seize the game animal parts. We therefore agree with Defendant that under a proper application of the plain view exception, Officer Jackson could not have entered Defendant's home in Defendant's absence to seize the game animal parts.

{13} Although Officer Jackson ultimately may have acquired information establishing probable cause to believe that some of the game animal parts were possessed unlawfully, the investigation during which Officer Jackson questioned Defendant and during which Defendant was unable to produce documentation of lawful possession occurred while Officer Jackson was present within Defendant's home without a warrant and over Defendant's objection. A search warrant does not completely nullify a homeowner's Fourth Amendment rights, allowing law enforcement officers executing a search warrant to declare a private residence a law enforcement open house. During the execution of a search warrant, a homeowner retains residual constitutional privacy rights, including the right to object to the presence of persons whose presence is not reasonably related to the purposes for which the warrant was issued. *See United States v. Showalter*, 858 F.2d 149, 152 (3rd Cir.1988) (affirming order suppressing "plain smell" olfactory observations of state troopers and DEA agents who accompanied U.S. Marshals conducting inventory search incident to civil forfeiture proceeding; emphasizing evidence that presence of state troopers and DEA agents was not necessary to the taking of the inventory or for the security of the marshals conducting the inventory and that state troopers and DEA agents did not participate in inventory or deploy themselves in a manner consistent with a peacekeeping function); *cf Wilson v. Layne*, 526 U.S. 603, 609–11, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (holding that occupants' Fourth Amendment rights were violated when law enforcement officers brought media into home to observe and record attempted execution of warrant; noting that media were not present to assist the police in executing the warrant; emphasizing principle that police actions in execution of a warrant must be "related to the objectives of the authorized intrusion"). There is no dispute that Officer Jackson entered Defendant's home to investigate possible violations of game and fish laws, not to assist Deputy Brazil and the other officers in searching for the evidence of CSP described in the warrant. Officer Jackson was not authorized by the search warrant issued in the CSP case to conduct an investigation inside Defendant's home into possible violations of game and fish laws. *Commonwealth v. Cruz*, 53 Mass. App.Ct. 24, 756 N.E.2d 1175, 1182–83 (2001) (rejecting Commonwealth's "plain view" argument; suppressing evidence of cellular

telephone fraud seized by second team of detectives composed of members of specially trained cellular phone fraud unit who entered the defendant's apartment while narcotics investigators were executing a search warrant limited to evidence of drug crimes).

{14} By the point in time that Officer Jackson acquired information that would have supported probable cause to believe that some of the game animal parts were unaccompanied by proper documentation, Officer Jackson already had infringed upon Defendant's constitutional rights by entering and remaining in Defendant's home without a warrant. The items of Defendant's personal property seized by Officer Jackson are the fruits of Officer Jackson's unlawful entry and presence and must be suppressed. *See State v. McNeal*, 2008–NMCA–004, ¶ 19, 143 N.M. 239, 175 P.3d 333 (citing *Wong Sun v. United States*, 371 U.S. 471, 484–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

{15} We reverse the order of the district court denying Defendant's motion to suppress and remand to the district court so that Defendant may withdraw his plea of no contest. *See* Rule 5–304(A)(2) NMRA.

{16} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge, and LYNN PICKARD, Judge.