# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                    **No. 28,753**

**JONATHAN HUNT,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Thomas J. Hynes, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Susan Roth, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**SUTIN, Judge.**

Defendant appeals from his convictions for second degree murder, battery, and assault. In this Court's first notice of proposed summary disposition, we proposed to affirm. Defendant responded with a memorandum in opposition and a motion to amend the docketing statement. In this Court's second notice of proposed summary

disposition, we granted Defendant's motion to amend and again proposed to affirm Defendant's convictions. Pursuant to an extension granted by this Court, Defendant has timely responded with a second memorandum in opposition. We have reviewed Defendant's arguments, and as we are not persuaded by them, we now affirm.

**Issue A:** Defendant contends that his attorney was ineffective by not hiring expert witnesses to analyze the blood stains on Defendant's fleece jacket. [DS 5] In order to demonstrate that his counsel was ineffective, Defendant must establish both that his counsel committed an unreasonable error and that the error prejudiced him. *See State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289. A decision made by trial counsel will not be considered an error for purposes of an ineffective assistance claim if it can be justified as a trial tactic or strategy. *See id.* To show prejudice, Defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal quotation marks and citation omitted).

We hold that Defendant has not established that his counsel's reliance on cross-examination of the State's expert cannot be justified as a legitimate trial strategy in this case. *See State v. Harrison*, 2000-NMSC-022, ¶ 63, 129 N.M. 328, 7 P.3d 478 (rejecting a claim of ineffective assistance on direct appeal and concluding that

defense counsel made a tactical decision not to hire an expert and to rely on his own cross-examination of the prosecution's expert). Without evidence presented in a hearing by Defendant's trial counsel, this Court cannot know whether counsel's choices were strategic because we do not have defense counsel's perspective on why he made them, and we do not know what limitations constrained defense counsel's actions. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 41, 130 N.M. 198, 22 P.3d 666 (alteration omitted) (internal quotation marks and citation omitted).

Even more importantly, Defendant cannot show that he was prejudiced by the failure to consult with an expert because he has not demonstrated that there is an expert available to testify in a manner that would aid his defense. We believe that in the absence of facts showing that Defendant could have actually presented favorable expert testimony had his attorney consulted with an expert, we conclude that Defendant has not established "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bernal*,

2006-NMSC-050, ¶ 32 (internal quotation marks and citation omitted). Therefore, Defendant has not made a prima facie case of ineffective assistance of counsel. *See State v. Herrera*, 2001-NMCA-073, ¶ 37, 131 N.M. 22, 33 P.3d 22 (holding that the defendant failed to establish a prima facie case of ineffective assistance of counsel for his counsel's failure to retain an expert to testify at trial when trial counsel had consulted with one expert whose opinion was unfavorable to the defendant and the defendant had not shown there was another expert who could have testified in a manner that likely would have changed the outcome of the case). If Defendant is able to obtain further evidence in support of his claim, he may raise it in a habeas corpus proceeding. *See Bernal*, 2006-NMSC-050, ¶ 33.

**Issue B:** Defendant asserts that the district court erred in refusing to give a step-down instruction on voluntary manslaughter. [DS 5-6] The denial of a jury instruction involves a mixed question of law and fact, which we review de novo. *See State v. Gaines*, 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.3d 438. "When considering a defendant's requested instruction[], we view the evidence in the light most favorable to the giving of the requested instruction." *State v. Romero*, 2005-NMCA-060, ¶ 8, 137 N.M. 456, 112 P.3d 1113. "In the case of lesser included

4

offense instructions, there must be some view of the evidence that could sustain a finding that the lesser offense was the highest degree of crime committed." *Id.*

An instruction on voluntary manslaughter would have been appropriate if there was evidence that Defendant was sufficiently provoked to reduce the charge from second degree murder to voluntary manslaughter. *See* UJI 14-220 NMRA. Sufficient provocation is defined as "any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions." UJI 14-222 NMRA. "The provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition." *Id.*

In this Court's first notice, we stated that it did not seem that there was any evidence of provocation other than the fact that Defendant may have been wounded and that Defendant's blood was at the scene of the murder. [DS 5] We noted that our Supreme Court has concluded that evidence that a defendant has suffered some injury at the hands of the victim is insufficient circumstantial evidence of provocation. *See State v. Martinez*, 95 N.M. 421, 424, 622 P.2d 1041, 1044 (1981) ("With reference to the defendant's wounds, the fact that he was injured constitutes some proof that the victim may have struck and shot [the] defendant. However, it also constitutes proof that the victim tried to defend himself against [the] defendant's deadly attacks. [The

5

d]efendant's wounds alone do not constitute sufficient evidence to support an inference of provocation or acts in the heat of passion. There must be other evidence."). We therefore proposed to conclude that the district court did not err in refusing to instruct the jury on voluntary manslaughter.

In Defendant's memoranda in opposition, he pointed out that witnesses at the campground testified that they heard Defendant arguing with someone earlier in the evening. [MIO 9; 2d MIO 6] However, as Defendant seems to recognize, "[i]t is well established that words alone are not enough to arouse the passions such that murder is reduced to manslaughter." *State v. Stills*, 1998-NMSC-009, ¶ 36, 125 N.M. 66, 957 P.2d 51. In certain circumstances, informational words may constitute sufficient provocation, *see Sells v. State*, 98 N.M. 786, 788, 653 P.2d 162, 164 (1982), but Defendant points to no evidence regarding the substance of any argument Defendant and the victim may have had. Defendant argues that *State v. Montano*, 95 N.M. 233, 620 P.2d 887 (Ct. App. 1980), supports his position that insulting words and action accompanying those words may support a voluntary manslaughter instruction, particularly when the victim and the defendant are intoxicated. [MIO 9; 2d MIO 6] However, in *Montano*, this Court relied on the fact that there was specific evidence presented that the victim became angry when the defendant asked him to

leave her home and that the victim may have been moving toward a gun sitting near him on a table when the defendant grabbed the gun and shot the victim. 95 N.M. at 236, 620 P.2d at 890. Therefore, we find *Montano* to be distinguishable.

Defendant also points out that the campers heard slapping sounds during the argument. [2d MIO 6] We note that those witnesses testified that, over the course of several hours during the night, the witnesses heard a repeated sound like someone hitting another person and that they heard Defendant repeating that he was a "bad mother fucker." [RP 232, 239, 242, 256] It is not clear to this Court whether Defendant intends to suggest that what the campers heard was the victim repeatedly hitting Defendant, and this Court does not review unclear arguments. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076. Furthermore, it does not appear that Defendant ever offered this theory to the district court in urging that the voluntary manslaughter instruction be given. Instead, the only evidence Defendant suggested was relevant to the instruction was the fact that Defendant had a head injury. [RP 359] As Defendant has not provided this Court with any authority to support a claim that evidence of the sound of hitting is sufficient to warrant an instruction on voluntary manslaughter, we hold that the district court did not err in refusing to give the instruction. Even if we were to assume that a jury could

7

reasonably conclude that the victim was hitting Defendant, the fact that a victim hits the person who kills her is not itself evidence of sufficient provocation. *See Martinez*, 95 N.M. at 424, 622 P.2d at 1044.

**Issue C:** Defendant argues that the district court erred in refusing to give a step-down instruction on involuntary manslaughter. [DS 6] We review this claim de novo. *See Gaines*, 2001-NMSC-036, ¶ 4. Involuntary manslaughter includes the unlawful killing of a human being without malice either in the commission of an unlawful act not amounting to a felony, in the commission of a lawful act that might produce death in an unlawful manner, or in the commission of a lawful act that might produce death without due caution and circumspection. *See* NMSA 1978, § 30-2-3(B) (1994).

In our first notice, we stated that it appears that Defendant argued that the involuntary manslaughter instruction was warranted because Defendant was drunk or otherwise mentally incapacitated at the time of the murder. [RP 367] The district court indicated that it did not find an involuntary manslaughter instruction appropriate because the evidence showed that the victim was struck repeatedly and that the repeated action indicated that it was not involuntary. [RP 368] We proposed to agree with the district court. We noted that the defense of intoxication or another mental

impairment applies only when a defendant is alleged to have had the specific intent necessary to establish first degree murder. *See* UJI 14-5110 NMRA. It does not apply to the general intent crime of involuntary manslaughter. *See* UJI 14-5105 NMRA (stating that voluntary intoxication is not a defense to general intent crimes). We also stated that Defendant points to no evidence tending to show that the victim's death would fall within the misdemeanor-manslaughter provision of the statute or that it was accidentally committed during a lawful act. *See* § 30-2-3(B). Accordingly, we proposed to conclude that the district court did not err in refusing to instruct the jury on involuntary manslaughter.

In Defendant's memoranda in opposition, he repeats that there was evidence presented at trial that he did not intend to kill the victim and that this evidence included that "he did not remember anything, . . . he was extremely drunk and acting without a 'full deck.'" [MIO 8; 2d MIO 7-8] Defendant does not respond to the legal authority cited by this Court that Defendant's intoxication does not reduce the crime to involuntary manslaughter, and we hold that such an instruction was not warranted by Defendant's voluntary intoxication. Furthermore, Defendant again fails to point to any evidence that would suggest that Defendant's conduct was either lawful or committed within the scope of the misdemeanor-manslaughter rule, which are

9

necessary elements of Section 30-2-3(B). As there was no evidence that Defendant's conduct was covered by any of the alternatives under Section 30-2-3(B), we hold that the district court did not err in refusing to give an involuntary manslaughter instruction.

**Issues D, E, & F:** Defendant contends that the prosecutor was guilty of prosecutorial misconduct when he asked Defendant whether he had "issues with women" and when he asked if Defendant had ever made a certain crude and derogatory characterization of having sex with his wife. [DS 6] Defendant also contends that the district court erred in allowing these questions to be asked over Defendant's objection. [DS 6] "[I]n reviewing claims of prosecutorial misconduct, we determine whether the trial court abused its discretion . . . by overruling the defendant's objection to the challenged conduct, or by otherwise failing to control the conduct of counsel during trial." *State v. Duffy*, 1998-NMSC-014, ¶ 46, 126 N.M. 132, 967 P.2d 807. Such claims are subject to harmless-error review. *See id.* ¶ 59. Claims of error in the admission of evidence are reviewed under the same standard. *See State v. Downey*, 2008-NMSC-061, ¶¶ 24, 39, 145 N.M. 232, 195 P.3d 1244 (reviewing the admission of evidence for an abuse of discretion and harmless error).

10

In this Court's first notice, we stated that, even assuming that the prosecutor's questions constituted prosecutorial misconduct and that the district court abused its discretion in overruling Defendant's objections, we proposed to conclude that the errors were harmless. "On appeal, prosecutorial misconduct will be deemed harmless only if we find that the evidence of guilt is so overwhelming that there can be no reasonable probability that the conviction was swayed by the misconduct." *Duffy*, 1998-NMSC-014, ¶ 59. We stated that the evidence against Defendant, although circumstantial, was overwhelming.

We noted that witnesses testified that Defendant and the victim arrived at the campsite together, that over the course of several hours during the night the witnesses heard a repeated sound like someone hitting another person, and that they heard Defendant repeating that he was a "bad mother fucker." [RP 232, 239, 242, 256] One witness stated that she heard arguing. [RP 257] There was evidence that in the middle of the night Defendant attacked another camper who was sleeping in her car and that prior to the attack he told her that all her friends were dead. [RP 252] There was evidence that when the other campers found the victim dead at Defendant's campsite, it appeared that she had been severely beaten. [RP 234] An expert testified that the victim died of blunt force trauma. [DS 4] After one of the campers knocked

Defendant unconscious, two campers watched him, did not allow him to leave, and accused him of killing the victim. [RP 235, 238, 285-86] Defendant did not ask questions or express concern about the victim's death and instead said, "Just kill me." [RP 235] Tests revealed that Defendant had the victim's blood on his hands and on his fleece jacket. [RP 294] An expert testified that the spatter on Defendant's jacket was consistent with impact spatter. [RP 309-10, 313-14] At the hospital, when a police officer asked Defendant if he could ask him a few questions, Defendant raised his hands and said, "you kind of caught me." [RP 327]

Defendant testified and did not deny committing the acts alleged, stating instead that he did not believe that he killed the victim, but that he could not remember. [RP 338] He stated that he could not remember anything that happened from about 9:30 that evening, when he went to bed, until he woke up in the helicopter as he was being transported to the hospital. [DS 4; RP 336]

In Defendant's first memorandum in opposition, he did not address this Court's harmless error analysis [MIO 10-13], but in his second memorandum, he asserts that the error was not harmless because no one actually witnessed the murder and the evidence was circumstantial. [2d MIO 4] The fact that there were no eyewitnesses to the murder does not change our analysis. In light of the overwhelming evidence

introduced at trial, we do not believe that there is a reasonable probability that the verdict was affected by the question whether Defendant had issues with women, by his answer, and by his testimony that he had made a derogatory comment about sex with his wife. We hold that the evidence of guilt in this case was so overwhelming as to render harmless the claimed prosecutorial misconduct and claimed error in the admission of this testimony.

**Issue G:** Defendant argues that his attorney was ineffective in failing to move for a mistrial when Defendant admitted that he made the crude and derogatory comment about having sex with his wife. [DS 6] In our first and second notices, we proposed to conclude that Defendant had not established ineffective assistance of counsel, because (1) Defendant had not shown that counsel erred in failing to move for a mistrial because he had not established that a mistrial was warranted, and (2) Defendant had not established, if his counsel did so err, that there was a reasonable probability that the outcome of Defendant's trial would have been different. *See Bernal*, 2006-NMSC-050, ¶ 32.

Defendant's memoranda in opposition merely repeat his assertion that counsel was ineffective—although he now argues that counsel should have asked for a curative instruction rather than a mistrial—without specifically addressing either of

13

the two requirements for establishing a prima facie case of ineffective assistance of counsel. [MIO 12; 2d MIO 3] Accordingly, we hold that Defendant failed to establish a prima facie case of ineffective assistance of counsel.

**Issue H:** We granted Defendant's motion to amend his docketing statement to raise a claim that the district court erred in denying his motion to suppress statements he made to the police after he was taken to the hospital with a head injury.[1] [MIO 15-23] "Appellate review of a district court's denial of a motion to suppress evidence presents a mixed question of law and fact: facts are reviewed under a deferential substantial-evidence standard, while the application of law to the facts is reviewed de novo." *State v. Moran*, 2008-NMCA-160, ¶ 6, 145 N.M. 297, 197 P.3d 1079. Defendant raises two alternative bases for his claim that the evidence should have

---

[1] We note that it is unclear whether the questioning actually occurred in the hospital. At the hearing on Defendant's motion, it seems that Officer Tanner stated that Defendant had been transported to the sheriff's office and that the questioning occurred there. [RP 137, 139] It also appears that Detective Weisheit testified at trial that he spoke with Defendant at the sheriff's office. [RP 327] In our second notice of proposed summary disposition, we stated that as both Defendant's motion to suppress and Defendant's memorandum in opposition indicated that the questioning occurred at the hospital, we would assume that the questioning occurred at the hospital. Defendant's second memorandum in opposition states that some of Defendant's statements were made at the hospital, while others were made at the sheriff's office. [2d MIO 11] Defendant does not explain which statements were made at which location and does not argue that the location makes a difference to the analysis of the issues raised.

14

been suppressed. First, he argues that the statements were involuntary and were obtained in violation of his right to due process. [MIO 15] Second, he argues that the statements were obtained in violation of his right not to incriminate himself as provided in *Miranda v. Arizona*, 384 U.S. 436 (1966). [Id.]

In our second calendar notice, we proposed to conclude that Defendant failed to preserve his due process voluntariness argument. Defendant's motion to suppress included a number of factual statements that Defendant argued warranted suppression, but included no legal authority to indicate the legal grounds for the motion. [RP 133-34] While some of these facts might have been relevant to an argument that Defendant's statements were not voluntarily made for purposes of due process, it appears from the tape logs in the record proper that Defendant never made such an argument. [RP 137-43] Instead, the parties' arguments appear to be solely directed toward the question of whether Defendant's statements were taken in violation of his Fifth Amendment rights. There is a brief discussion of whether certain of Defendant's statements were "voluntary," but the context suggests that what the parties were discussing was not voluntariness for due process purposes, but rather whether Defendant's statements were either spontaneously volunteered or made in response to police interrogation for *Miranda* purposes. [RP 142] *See State v. Fekete*, 120 N.M.

15

290, 298, 901 P.2d 708, 716 (1995) ("A claim that the police coerced a statement [in violation of due process] requires a different analysis than a claim that an accused voluntarily waived his or her Fifth Amendment protections under *Miranda*."). Because there seemed to have been no discussion about the possibility of coercion or police overreaching, which is the appropriate due process analysis, we proposed to conclude that the issue was not preserved. Defendant has not responded to this Court's preservation analysis and fails to argue either that the issue was in fact preserved or that this Court may review the issue regardless of whether it was preserved. [2d MIO 10-15] Accordingly, we affirm on the basis of lack of preservation.

Furthermore, even if we are incorrect and Defendant did preserve his argument, we would hold that the evidence showed that Defendant's statements were voluntary.

> A confession is involuntary only if official coercion has occurred. Official coercion occurs when a defendant's will has been overborne and his capacity for self-determination [has been] critically impaired. If, however, the confession is the product of an essentially free and unconstrained choice by its maker, it may be used against the defendant without offending due process. On appeal, we review the totality of the circumstances to determine as a threshold matter of law whether the State has proved by a preponderance of the evidence that Defendant's confession was voluntary.

16

*State v. Lobato*, 2006-NMCA-051, ¶ 9, 139 N.M. 431, 134 P.3d 122 (alteration in original) (internal quotation marks and citations omitted). "[W]ithout police misconduct, there is no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Fekete*, 120 N.M. at 299, 901 P.2d at 717 (internal quotation marks and citation omitted).

Defendant contends that his "seriously debilitated physical and mental state" was evidence that his statements were not voluntary. [MIO 17] However, as this Court has noted previously, while a defendant's physical and mental state may be otherwise relevant to the question of how much weight a jury should give any statements, those factors are not relevant to the question of voluntariness for due process purposes since they do not demonstrate official coercion. *See Lobato*, 2006-NMCA-051, ¶ 11 (noting that evidence that a defendant was tired, hungry, or suffering from the effects of alcohol does not demonstrate that his statement was involuntary in the absence of coercive law enforcement activity); *see also Fekete*, 120 N.M. at 299, 901 P.2d at 717 (stating that "a defendant's mental state at the time he or she makes incriminating statements to the police is only one factor for the trial court to consider when determining whether such statements were voluntary" and holding that the fact the defendant was suffering from a mental illness when he was

17

questioned did not render his statements involuntary since the police "did not threaten or coerce" the defendant or "promise him special treatment if he talked to them"). Defendant's primary argument seems to be that he was in pain and that there is some possibility that the hospital had given him pain medication. [MIO 17; 2d MIO 12] Defendant also asserts that the officers' conduct in questioning Defendant under such circumstances itself constitutes overreaching, but has cited no authority to support his argument that the act of questioning a person who is in pain constitutes a coercive police practice when the police did not cause the pain and are not contributing to it. [2d MIO 12-15] Where Defendant cites no authority in support of his claim that police questioning of someone who is in pain and in a hospital constitutes a due process violation, we will assume that no such authority exists. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). Accordingly, we conclude no due process violation occurred.

We also hold that Defendant's statements were not elicited in violation of his *Miranda* rights. *Miranda* warnings are only required when a person is (1) subject to an interrogation, and (2) while in police custody. *State v. Munoz*, 1998-NMSC-048, ¶¶ 39-40, 126 N.M. 535, 972 P.2d 847. Here, we proposed to affirm because it does not appear that Defendant's statements were made in response to questions by the

18

police, but instead appear to have been spontaneously volunteered. Defendant's second memorandum in opposition does not directly address this conclusion and instead focuses on the issue of whether Defendant was in custody. [2d MIO 15-18] Because Defendant has not shown that our conclusion that his statements were spontaneously volunteered is incorrect, we now determine there was no error in the district court's refusal to suppress this evidence. *See Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683 ("Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law.").

"Interrogation occurs when an officer subjects an individual to questioning or circumstances which the officer knows or should know are reasonably likely to elicit incriminating responses." *Fekete*, 120 N.M. at 300, 901 P.2d at 718 (internal quotation marks and citation omitted). "[S]tatements which the police did not attempt to elicit, and statements made during custodial interrogation that may be in response to police questioning but are unresponsive to the questions asked" are volunteered and do not give rise to any rights under *Miranda*. *Fekete*, 120 N.M. at 300, 901 P.2d at 718. In this case, it appears that while Defendant was sitting in the break room of the hospital, Detective Weisheit came in and asked Defendant if he would like to go

19

upstairs to talk to him. In response, Defendant apparently said "You kind of caught me." [RP 16, 133, 327] We hold that Detective Weisheit's question was not the sort of question intended to elicit an incriminating response, because the expected response to such a question is either yes or no—not an immediate confession. Accordingly, we hold that Defendant's statement was volunteered.

It appears that after Defendant made his first statement, Detective Weisheit took Defendant upstairs and began to advise him of his *Miranda* rights. [RP 16] Detective Weisheit began to review a waiver of rights document, and in the middle of the review, Defendant said "[I]f I have done some horrible thing, which it seems I have, then I need to see an attorney." [RP 16, 141] We hold that the district court did not err in refusing to suppress this statement because it was both spontaneously volunteered and because Defendant had already been advised of his rights when he made it.

Defendant also made a few more statements at the hospital, which were: "I would never do anything like that but if, somebody, if actually did that euthanasia. Cause I am f—ing insane. That's crazy. I could never even, in my lifetime anyway." [RP 150-51; MIO 15; 2d MIO 10] We note that we failed to specifically address these statements in our second notice of proposed summary disposition—perhaps because

20

none of Defendant's arguments or authorities were relevant to the legal issues raised in the district court regarding the statements. The record indicates that these statements were made to hospital staff and that an officer merely overheard Defendant. [RP 142-43 (Euthanasia is incorrectly transcribed as "ufanataion" and "ufination."), 147-48 (State's brief arguing that a statement to a health care provider should not be excluded under *Miranda*), 150-51 (district court's order indicating that the statements were made to a medical professional but were not a confidential communication for purposes of diagnosis or treatment under Rule 11-504 NMRA)]. As Defendant has not argued that the district court erred in concluding that these statements should not be excluded because they were made to a health care provider, we see no error. *See Hennessy*, 1998-NMCA-036, ¶ 24 ("Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law.").

**Issue I:** We granted Defendant's motion to amend his docketing statement to add this issue, in which he raises additional claims of ineffective assistance of counsel. These claims are based on his trial counsel's failure to explore Defendant's past brain injuries, failure to locate character witnesses, failure to explain to the jury that Defendant had no prior criminal record, and failure to present medical records that

21

appellate counsel seems to assume would have shown that Defendant's forehead injury occurred prior to when he was hit by Mr. Contreras. [MIO 23-26] As with Defendant's other claims of ineffective assistance, we cannot conclude on the record before us that Defendant has established a prima facie case of either an unreasonable error on the part of his trial counsel or that the results of the trial likely would have been different if trial counsel had done as appellate counsel suggests.

Therefore, for the reasons stated in this opinion and in this Court's first and second notices of proposed summary disposition, we affirm.

**IT IS SO ORDERED.**


_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**


_____
**CYNTHIA A. FRY, Chief Judge**


_____
**RODERICK T. KENNEDY, Judge**