## COMMONWEALTH *vs.* ESTERLINA FERNANDEZ.

No. 02-P-6.

Plymouth. January 22, 2003. - March 12, 2003.

Present: DOERFER, KASS, & McHUGH, JJ.

*Constitutional Law,* Probable cause. *Search and Seizure,* Probable cause. *Probable Cause.*

At the trial of indictments alleging unlawful distribution of a controlled substance, unlawful possession of a controlled substance with intent to distribute, and of having been previously convicted of similar offenses, the evidence was sufficient to show that the police officers had probable cause to arrest the defendant, where the police could reasonably think that the defendant, who was a passenger sitting in a parked car from which drug sales were solicited by a third person moving back and forth from the vehicle, was involved with the unlawful transaction. [564-567]

INDICTMENTS found and returned in the Superior Court Department on February 13, 1996.

A pretrial motion to suppress evidence was heard by *John A. Tierney,* J., and the cases were also heard by him.

*David M. Skeels,* Committee for Public Counsel Services, for the defendant.

*Carolyn A. Burbine,* Assistant District Attorney, for the Commonwealth.

KASS, J. Before us is a question whether police could, within the limits set by the Fourth Amendment to the Constitution of the United States, arrest and search a passenger in a motor vehicle from which the driver was observed making an unlawful drug sale.[1] A judge of the Superior Court denied a motion to suppress the fruits of the search of the passenger: a marked $20 bill that a police officer had used to make a drug buy; a pager;

---

[1]The defendant claims equivalent protection under art. 14 of the Massachusetts Declaration of Rights.

$343 in cash; and a plastic bag with seventeen pieces of "a white hard substance." The defendant elected a trial without a jury and was convicted of unlawful distribution of a controlled substance (cocaine), unlawful possession of a controlled substance (cocaine) with intent to distribute, and of having previously been convicted of similar offenses. We affirm.

*Facts.* In summary, these are the facts the motion judge found. A State trooper, dressed in casual civilian clothes and working in an unmarked police vehicle, was "trolling" for drug dealers on a street in Brockton. A man hailed him and asked what he wanted. "A twenty," the trooper said, whereupon the man beckoned to follow him around the corner to a gray car parked on Appleton Street at its intersection with Wyman Street. It was 8:45 P.M. of a December night and, therefore, dark. By the headlights of his cruiser, the trooper saw two women in the front seat. He watched the man who — on foot — had led him there go to the driver and receive from her an object. That object, which turned out to be cocaine in rock form, was duly delivered by the man to the trooper who, in exchange, gave a marked $20 bill to the man. The man returned to the car and gave the $20 bill to the driver. Esterlina Fernandez, the defendant, was at all times seated in the passenger seat of the car from which the man brought the cocaine.

In his findings, the judge emphasized: (1) the trooper's experience and "knowledge of this type of drug activity modus operandi"; (2) that the transaction occurred in an area known for illegal drug dealing; (3) that the car was parked at night on a side street with no lights on; and (4) and that actual criminal activity, as opposed to suspected criminal activity, had taken place in the defendant's "presence and within her observation." There is no testimony in the record that the trooper had "knowledge of this type of drug activity modus operandi," that the buy had occurred in a high drug crime area, or that the car from where the cocaine was dealt was on a side street. It may be that the experienced judge knew a good deal about the locus of the crime and the savvy of the State trooper. Prescinding from whether such facts might be the subject of judicial notice, the

judge did not suggest he had found them on that basis.[2] We, therefore, do not take into account in our consideration of the case the findings of the motion judge that we have identified as without support in the record.

Following the buy, the trooper made a radio call to a "takedown" team of Brockton police officers. They moved in on the gray car, arrested both women in it, and searched them incident to those arrests. Both the arrests and the searches were without warrants. The defendant had the marked $20 bill. She also had on her person the inculpatory items previously mentioned.

2. *Discussion.* The defendant urges that the evidence, before she was searched, stood for nothing more than her presence in the gray automobile when the drug deal occurred. In that case, the argument continues, the police lacked probable cause to arrest the defendant, and the search incident to her arrest was unlawful because of the illegality of the underlying arrest. See G. L. c. 276, § 1; *Commonwealth* v. *Santiago*, 410 Mass. 737, 742-743 (1991). Compare *Commonwealth* v. *Wedderburn*, 36 Mass. App. Ct. 558, 563-564 (1994).

On the evidence at the motion hearing, the defense points out, the State trooper saw the driver pass cocaine to the man who had solicited the trooper's business and the trooper saw that man give the $20 bill to the driver. The trooper never saw the defendant handle the drug or the money or saw her manifest participation by some movement that the trooper observed. In support of her "mere presence" defense, the defendant relies heavily on *United States* v. *Di Re*, 332 U.S. 581 (1948), and *Commonwealth* v. *Sampson*, 20 Mass. App. Ct. 970 (1985). In the *Di Re* case, *supra* at 583, the United States Office of Price Administration (OPA) had a tip from an informer, Reed, that he had arranged to buy counterfeit gasoline ration coupons from a man named Buttitta at a designated place in Buffalo, New York. An OPA investigator and a city detective picked up Buttitta's trail and followed it to the appointed place where Buttitta's car was parked. In that car they found their informer, Reed, clutch-

---

[2]For examples of what is ordinarily the subject of judicial notice, see *Nantucket* v. *Beinecke*, 379 Mass. 345, 352 (1979) (judicial notice is not to be extended to personal observations of the judge); Liacos, Brodin & Avery, Massachusetts Evidence § 2.8 (7th ed. 1999).

ing two gasoline coupons (later determined to be counterfeit). Buttitta sat in the driver's seat and beside him in the passenger seat was Di Re. All three were taken into custody and to the police station; i.e., they were arrested, the informer presumably for show. At the station, Di Re was booked and underwent a thorough search. Between his shirt and his underwear, the authorities found one hundred gasoline ration coupons that, upon inspection, were also found to be counterfeit. Di Re was convicted of violating 50 U.S.C. App. § 673 (Supp. V 1946), the Second War Powers Act of 1942.

The Court held that on those facts it would not draw an inference of participation in the crime by Di Re, who, being present in the car, must have observed the unlawful transaction. *United States* v. *Di Re*, 332 U.S. at 593-594. Her case exactly, the defendant argues. There are, however, differences. It was not apparent, the Court reasoned, that Di Re would have known the ration coupons were counterfeit. *Id.* at 393. The Court also emphasized that the informer's tip mentioned only Buttitta, *id.* at 592, and that, when the counterfeit coupons had been passed and the inspectors had arrived, "Reed, present as the informer, pointed out Buttitta, and Buttitta only, as a guilty party." *Id.* at 594. On the basis of everything the OPA inspector and the police detective knew when they arrested Di Re, he may have, indeed, just been along for the ride.

In *Commonwealth* v. *Sampson*, 20 Mass. App. Ct. at 971, an affidavit, in support of an application for a warrant to search the defendant Sampson, recited that Sampson was seated at a table in a drinking establishment. Another man at the same table was writing pool numbers on a pad of paper. When police entered the bar, the man with the writing pad tried to conceal it. Sampson made no furtive gesture or movement. We decided that those facts did not establish probable cause to search Sampson. See *ibid.* "A person's proximity, without more, to others independently suspected of criminal activity does not establish probable cause to search that person." *Id.* at 971, and cases there cited.

Considerably in the aftermath of *Di Re*, Justice Stevens, dissenting in *Wyoming* v. *Houghton*, 526 U.S. 295, 309 (1999), referred to a "settled distinction between drivers and pas-

sengers" as to who may be searched. Yet the distinction is not that absolute. See the majority opinion in *Wyoming* v. *Houghton, supra* at 298, 301-303, concluding that a Wyoming highway patrol officer, who made a traffic stop and noticed a hypodermic syringe in the driver's shirt pocket, had probable cause to make inquiries of a passenger, inquiries that led to a search of the passenger's purse.

In the instant case, the information conveyed to the take-down team did not implicate only the driver, to the exclusion of the passenger. The information the back-up police had from the State trooper was that drugs were being dealt from the gray car. There were two women in the car. The police could reasonably infer, from what the undercover trooper had reported, that the car with the two women in it was the store from which a retail trade in cocaine was being conducted, with a salesman on foot who solicited customers and completed transactions with them close to his base. See *Commonwealth* v. *Mendes*, 46 Mass. App. Ct. 581, 589-590 (1999). See also *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 615, 617-619 (1990), *S.C.*, 410 Mass. 1005 (1991) (accouterments of apartment, including locks and barricades, supported inference that the occupants were participants in drug trafficking enterprise). The police here had information of a crime being committed, i.e., the sale of cocaine from the gray car. The driver was visibly implicated as she was seen to handle both the drugs and the money. It does not require impermissible exercise of imagination to think that a passenger, sitting in a parked car from which drug sales are solicited by a runner moving back and forth from the vehicle, was involved with the unlawful transaction. A reasonable person would think it probable that the passenger, in these circumstances, was an accomplice in the unlawful conduct. See *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982) ("Probable cause to arrest exists when, at the moment of arrest, the facts and circumstances known to the police officers were sufficient to warrant a person of reasonable caution in believing that the defendant had committed or was committing a crime"); *Commonwealth* v. *Williams*, 422 Mass. 111, 119 n.11 (1996); *Commonwealth* v. *Kennedy*, 426 Mass. 703, 708-711 (1998); *Commonwealth* v. *Garcia*, 34 Mass. App. Ct. 386, 393 n.8 (1993); Smith, Criminal

Practice and Procedure §§ 238-243 (1983); Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 12-2 (2001). The police could reasonably think that someone engaged in the high risk business of selling narcotics would not tolerate the presence in the parked vehicle from which inventory was purveyed, as described above, of a person unconnected to the business being conducted. The police, therefore, could think it probable that the woman in the passenger seat was a member of the sales team. See *Commonwealth* v. *Kennedy, supra* at 708-711.[3]

*Judgments affirmed.*

---

[3]The search here was directed, as required by G. L. c. 276, § 1, to seizing evidence of the crime for which the arrest had been made. Compare *Commonwealth* v. *Blevines*, 438 Mass. 604, 609-610 (2003).