COMMONWEALTH vs. MITCHELL J. GRIFFIN.

No. 10-P-195.

Berkshire. October 13, 2010. - March 22, 2011.

Present: KANTROWITZ, KAFKER, & WOLOHOJIAN, JJ.

*Controlled Substances. Arrest. Probable Cause. Search and Seizure,* Automobile, Arrest, Reasonable suspicion. *Constitutional Law,* Search and seizure, Investigatory stop, Arrest. *Search and Seizure,* Probable cause. *Constitutional Law,* Reasonable suspicion.

A Superior Court judge properly allowed a criminal defendant's pretrial motion to suppress a controlled substance found in a police cruiser in which the defendant had earlier been transported, where, despite the existence of probable cause to arrest the driver of an automobile in which the defendant had been a passenger, the actions of the police in handcuffing the defendant, reading him the Miranda rights, and transporting him to the police station for a strip search transformed an investigatory stop into an arrest for which probable cause did not exist. [128-129] WOLOHOJIAN, J., concurring.

INDICTMENTS found and returned in the Superior Court Department on April 29, 2009.

A pretrial motion to suppress evidence was heard by *Daniel A. Ford,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Ralph D. Gants,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

*Donna Jalbert Patalano* for the defendant.

KANTROWITZ, J. The defendant, Mitchell J. Griffin, was charged with possession with intent to distribute cocaine, subsequent offense, G. L. c. 94C, § 32A(*d*); trafficking in cocaine, G. L. c. 94C, § 32E(*b*)(1); and conspiracy to violate the Controlled Substances Act, G. L. c. 94C, § 40. A judge of the Superior

Court allowed the defendant's motion to suppress cocaine seized from a police cruiser in which he had been a passenger. The Commonwealth appeals, arguing that the defendant's motion to suppress should have been denied because the police had probable cause to search the defendant down to his "last layer of clothing," and thus could transport him to the police station in order to spare the defendant the humiliation of being subjected to such a search in a public setting. We affirm.

*Facts.* On March 6, 2009, Investigators Michael Nykorchuck and David Kirchner of the Pittsfield police department learned from a confidential informant (CI or informant), whose credentials are not being challenged here, that Lawrence Posey would be traveling out of town that evening to buy a kilogram of cocaine and would return to Pittsfield the following day. The CI believed that Posey's destination was New York City. The CI did not provide any information regarding the defendant.

At 5:40 P.M., the investigators saw Posey pumping gasoline at a Shell gasoline station and for the first time saw the defendant sitting in the passenger seat. Investigator Kirchner recognized the defendant from "prior investigations," the nature of which — victim, witness, or suspect — was not established. The police eventually observed the defendant in Posey's car as it headed in the direction of New York City.[1] Information from the New York State police confirmed that the car was headed in the direction of New York City.

The following day, March 7, 2009, the CI told Investigator Nykorchuck that he had spoken to Posey, and that Posey would be back sometime after 7:00 P.M. The CI did not mention anything to the police about the whereabouts, actions, or intentions of the defendant. The police set up surveillance in New York and Massachusetts and observed Posey and the defendant traveling toward the center of Pittsfield.

Once the police identified Posey's car, Posey was instructed to pull over, which he did without incident. Neither Posey nor the defendant made any suspicious or furtive gestures. Investigator Kirchner removed Posey from the vehicle and another officer apprehended the defendant. The officers were armed, one

---

[1]There is no issue concerning the reliability, veracity, or information supplied by the CI to the police.

visibly so. Both men were then patted down. No drugs or weapons were found.[2] Both men were then handcuffed and read the Miranda rights.

Investigator Kirchner told the defendant that he was not under arrest at that time, although he was handcuffed from behind, but that there was probable cause[3] to believe that cocaine was in the vehicle. Investigator Kirchner then informed the defendant that he and Posey would be transported to the police station, along with Posey's vehicle, where they would be strip searched and a search of the vehicle would be conducted.[4] The interaction with the defendant lasted only a few minutes.

The police took Posey and the defendant to the police station in separate cruisers. After dropping off the defendant, Officer Bassi, who had driven the defendant, searched his cruiser for contraband. Nothing was found. In addition, Posey's car was searched, with the same negative result. Subsequently, the police enlisted the services of a canine unit, and the dog aggressively alerted the police to the front passenger seat of Posey's car, where the defendant had been seated. The police eventually strip searched both men; this search, like the previous searches, did not produce any contraband. At some point, it is unclear when, Officer Bassi found cocaine in his police cruiser while the car was parked in the parking lot of a local store.[5]

---

[2]Investigator Nykorchuck, who was then on light duty, was not present when Posey's vehicle was stopped. Although Nykorchuck knew from his experience that drug dealers hide their product in different places, including their pockets and compartments in the car, he had no prior information from the CI as to where Posey might be hiding the cocaine or whether Posey might have given the drugs to the defendant, which the investigator believed was possible.

[3]Investigator Kirchner believed he had reason to search the defendant because Kirchner and other officers had observed the defendant leave with Posey for New York City and return in Posey's vehicle, the CI had provided information that Posey would be bringing drugs back from New York, and "the fact that [the drugs] could have been easily transferred from . . . Posey to [the defendant]."

[4]Had a strip search been warranted (see note 7, *infra*), Investigator Kirchner was correct in his belief that the police station would be a safer and more appropriate place to conduct such a search because of the conditions at the location of the stop; the breakdown lane was narrow, the lighting was poor, and another officer had a canine with her, which posed additional safety concerns. Investigator Nykorchuck further testified that protocol precludes officers from performing a strip search on the street.

[5]In response to a question from the judge on the subject, defense counsel

Commonwealth v. Griffin.

*Superior Court decision.* On December 16, 2009, a Superior Court judge allowed the defendant's motion to suppress. In his findings of fact and rulings of law, the judge noted that while there was "probable cause to believe that Posey was in possession of cocaine, and that the cocaine would be found either on his person or in the vehicle . . . he was driving, [and there was] also . . . probable cause to arrest Posey,"[6] the situation for the defendant was different, as he was "nothing more than a passenger in the vehicle driven by Posey." There was no information whatsoever about the defendant, other than his being a passenger. Nor did he act in any suspicious manner upon being confronted by the police. As such, the officers were without sufficient justification to arrest the defendant, much less conduct a strip search.[7] The judge did note that the police "may have had a reasonable suspicion that the defendant was traveling with Posey in order to assist him in his illicit transactions," and thus were entitled to conduct the threshold inquiry, but this had revealed nothing. He concluded that, by handcuffing and transporting the defendant "for purposes of conducting an unwarranted strip search," the officer raised the seizure to an arrest "for which there was no probable cause." The motion judge ruled that the police exceeded the bounds of an investigatory stop and that any evidence recovered after the initial seizure was the "fruit of the poisonous tree," citing *Wong Sun* v. *United States*, 371 U.S. 471 (1963).

*The law.* The guiding legal principles are clear and need not be discussed at length. "Probable cause to arrest exists where the facts and circumstances in the arresting officer's knowledge and of which he or she has reasonably trustworthy information

responded, "Again, I guess we should bring in Officer Bassi that testified [*sic*] at some later date, after he dropped Mr. Griffin off at the police station and after he searched his cruiser, he went up to Carr Hardware in the parking lot and then he supposedly found the drugs." The record also does not indicate the amount of drugs found. During oral argument, defense counsel estimated the weight to be twenty-three grams, considerably less than the expected kilogram of cocaine.

[6]The judge was satisfied that the CI's information was sufficient to fulfil both prongs of the *Aguilar-Spinelli* test. See *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 497 (1984); *Commonwealth* v. *Shea*, 28 Mass. App. Ct. 28, 30-31 (1989). The police were also able to corroborate the CI's information.

[7]The Commonwealth conceded in its brief the impropriety of the strip search.

are sufficient to warrant a person of reasonable caution in believing that an offense has been or is being committed." *Commonwealth* v. *Williams*, 422 Mass. 111, 119 n.11 (1996).

When there is probable cause to search a car, police are permitted to "inspect [the] passengers' belongings found in the car that are capable of concealing the object of the search," *Wyoming* v. *Houghton*, 526 U.S. 295, 307 (1999), but this authority does not extend to the search of a person found in that automobile. See *id.* at 303 n.1 (distinguishing between probable cause to search passenger's purse and probable cause to search passenger). "A person's proximity, without more, to others independently suspected of criminal activity does not establish probable cause to search that person." *Commonwealth* v. *Sampson*, 20 Mass. App. Ct. 970, 971 (1985). A person is not a container. See *Wyoming* v. *Houghton*, 526 U.S. at 308 (Breyer, J., concurring).

*Discussion.* It appears clear that probable cause existed to stop, seize, and arrest Posey. It follows that the police were also warranted in searching Posey's car, the accomplishment of which included the demand that the passenger exit the vehicle. Compare *Commonwealth* v. *Correia*, 66 Mass. App. Ct. 174, 177 (2006) (odor of burnt marijuana in car entitled police to search interior and to issue exit order to defendant-passenger in order to facilitate search). As for the defendant, the facts known to the police about him at the time of the stop included (1) he had been in Posey's car the day before, heading to New York City to buy drugs; (2) he was in the same car, still driven by Posey one day later, having returned from New York City after the drug purchase ostensibly had been made; (3) Investigator Kirchner recognized him (in some unclear capacity) from previous investigations; and (4) he made no furtive gestures or suspicious movements upon being stopped.

Armed with this information, the police handcuffed the defendant, read him the Miranda rights, and transported him to the police station for a strip search. We agree with the motion judge's conclusion that at that point, what had been an investigatory stop was converted into an arrest for which there was no probable cause.[8]

Even if reasonable suspicion existed to question and conduct

---

[8]After arresting the defendant, the police learned that he and Posey had

a pat-down of the defendant, once nothing more was learned or discovered, either on him or in the car, the defendant should not have been further detained. See, e.g., *Commonwealth* v. *Torres*, 424 Mass. 153, 159 (1997), quoting from *Commonwealth* v. *Torres*, 40 Mass. App. Ct. 6, 9-10 (1996) ("[O]nce any potential threat to the officer's safety was dispelled and there was no reasonable suspicion that criminal activity [involving the defendant] was afoot, any basis for further detention evaporated"). Compare *Commonwealth* v. *Wing Ng*, 420 Mass. 236, 237-238 (1995) (no automatic right to pat frisk companion solely for being in company of one lawfully arrested).

We note that, unlike *Commonwealth* v. *Young*, 78 Mass. App. Ct. 548, 555 (2011), wherein the passenger, upon being properly asked to exit the motor vehicle, acted in a suspicious manner, here the defendant did nothing. Moreover, he was never mentioned by the CI, nor did the CI ever tell the police that someone would be traveling with Posey. Compare *United States* v. *Di Re*, 332 U.S. 581, 594 (1948) ("Any inference that [another] on the scene of a crime is a party to it must disappear if the Government informer singles out the guilty person"); *Wyoming* v. *Houghton*, 526 U.S. at 303 & n.1, 307 (reaffirming *Di Re*, but allowing search of passenger's possessions).

For the foregoing reasons, the suppression order of the Superior Court is affirmed.[9]

*So ordered.*

WOLOHOJIAN, J. (concurring). Officers in the drug unit of the Pittsfield police department were working with a confidential informant (CI) who had purchased "crack" cocaine on many occasions from one Posey, a local drug dealer. On March 6, 2009, the police (using the CI) conducted a controlled purchase of cocaine from Posey. Posey arrived at the prearranged location driving a maroon Dodge Caliber automobile, which police

---

been together the entire time they were in New York and that a canine unit dog reacted to the seat in Posey's car in which the defendant had been seated.

[9]As there have been no arguments by either party concerning the expectation of privacy one has in the rear seat of a police cruiser, abandonment, or the significance, if any, of where and when the drugs were ultimately discovered, we need not address these issues.

were able to determine was a rental car from its license plate. An inquiry to the rental agency revealed that the car was due back that day at 5:30 P.M., and that Posey would at that time pick up a gray Mazda 6 automobile.

On March 6, the CI told the police that Posey had informed him that he (Posey) was getting low on supplies and would be going to New York City to restock. The police knew that local dealers stock up in New York City, or other big cities, where they can get larger quantities at lower prices. Police also knew that drug dealers commonly use rental cars for purposes of their illegal trade.

As predicted, police observed Posey with a gray Mazda at 5:40 P.M. on March 6. In the front passenger seat was the defendant, who was "very much" recognized by one of the officers from prior investigations (note plural).[1] The two were at a gasoline station, where Posey was filling the car with gasoline. That task completed, the car headed towards the New York border; Posey was driving and the defendant was in the passenger seat. The police lost sight of the car at the State border, but New York State troopers spotted it some time later continuing in the direction of New York City.

On March 7 (the following day), the CI told police that he had spoken by telephone to Posey, who had said he would return later that day after 7:00 P.M. with crack cocaine for sale. After the CI passed this information along to the police, they set up surveillance along the expected routes. At 7:57 P.M., the gray Mazda was stopped; Posey was driving and the defendant was in the front passenger seat.

In my view, on these facts, the police had probable cause to arrest the defendant for possession of cocaine (whether under a theory of constructive possession or joint venture) and possession with intent to distribute cocaine (under a theory of joint venture). The defendant was on a tightly-timed, organized, and lengthy trip to make a wholesale purchase of drugs with a known drug dealer. He was not in the car by happenstance; this is not a case of "mere" presence. It is eminently reasonable to infer that the defendant knew the purpose of the trip; Posey had been free

---

[1]As the majority correctly states, the officer did not state in what capacity Griffin was known to police, i.e., as witness, target, or victim.

and open with that information with the CI, and it would strain credulity to think that he would not be equally so with the person he took along for the trip. "[D]rug dealing [is] an enterprise to which a dealer would be unlikely to admit an innocent person." *Maryland* v. *Pringle*, 540 U.S. 366, 373 (2003). Even where there is no illegal purpose involved, common sense and life experience suggest that two people do not take a long joint car trip without exchanging information about why each is taking it. "[A] car passenger . . . will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Wyoming* v. *Houghton*, 526 U.S. 295, 304-305 (1999). "A reasonable person would think it probable that the passenger, in these circumstances, was an accomplice in the unlawful conduct." *Commonwealth* v. *Fernandez*, 57 Mass. App. Ct. 562, 566 (2003).

For these reasons, I cannot join in the reasoning of the majority. I concur in the result, however, because the Commonwealth does not argue here (nor did it argue below) that there was probable cause to arrest the defendant.[2] See *Commonwealth* v. *Bettencourt*, 447 Mass. 631, 633-634 (2006) (arguments not raised by Commonwealth in connection with motion to suppress at trial level will not be considered on appeal as basis for reversal of decision allowing defendant's motion).

---

[2]Indeed, at oral argument, the Commonwealth expressly stated that it was not arguing that the officers had probable cause to arrest.