SUPERIOR COURT 
 
 COMMONWEALTH v s. MARKUS SOUZA

 
 Docket:
 23-307
 
 
 Dates:
 August 28, 2025
 
 
 Present:
 Peter B. Krupp
 
 
 County:
 NORFOLK
 

 
 Keywords:
 MEMORANDUM AND ORDER ON MOTION TO SUPPRESS EVIDENCE
 
 

             Markus Souza (“Souza”) is charged with trafficking more than 100 grams of cocaine on August 11, 2023 (Indictment 001); distribution of a Class B controlled substance on September 13, 2023 (Indictment 002), July 12, 2023 (Indictment 003), and August 4, 2023 (Indictment
004); and witness intimidation on September 13, 2023 (Indictment 005). The indictments follow, but do not all stem from, a motor vehicle stop on September 13, 2023. Souza now moves to suppress the fruits of that stop. After an evidentiary hearing during which the Commonwealth called Weymouth Police Det. Sgt. Mark Donahue, and based on the following factual findings, the motion is allowed.
FINDINGS OF FACT
            Based on the preponderance of the credible evidence, and the reasonable inferences that may be drawn therefrom, I make the following factual findings:
            At all relevant times, Souza lived at 166 Lake Street in Weymouth.
            In the Summer of 2023, the police in Weymouth investigated Souza for selling street- level amounts of cocaine. During the investigation, Souza was seen to be driving a Lincoln sedan. That vehicle was impounded pending a forfeiture proceeding. The investigation lasted a
 
                                                            -1-
 
couple of months and ended in August 2023.[1] Indictments 001, 003 and 004 apparently flow from that investigation.[2]
            On September 13, 2023, Det. Sgt. Donahue saw a Volkswagen SUV (“the VW SUV”), which he knew to be Souza’s girlfriend’s vehicle, parked on Broad Street in Weymouth directly across Broad Street from the Next Page Café. The Next Page Café is at the corner of Broad and Middle Streets in Weymouth, which is a corner with a number of other commercial establishments. The VW SUV was unoccupied. The police had no advance information about Souza that evening or about Souza using the VW SUV to sell drugs.
            Det. Sgt. Donahue and Det. Robert Gervasi, who were both working as part of the Weymouth Police Department’s narcotics unit, decided to watch the VW SUV. Det. Sgt. Donahue parked his unmarked vehicle approximately 50-75 yards behind and on the same side of Broad Street as the VW SUV.[3] From his position, Det. Sgt. Donahue had a substantially obstructed view of the VW SUV, as there were several cars parked between his vehicle and the VW SUV.
 
--------------------------------------------
 
            [1]        There was no evidence presented about what precipitated this investigation and what was observed (or not) during the investigation. The investigation involved pole camera surveillance and application for a search warrant for Souza’s home. I do not know if it suggested a modus operandi consistent or inconsistent with the observations on September 13, 2023.
            [2]        The indictments before me were returned in December 2023. I take judicial notice of the dockets in Quincy District Court Case Nos. 2356CR2918 and 2356CR3327. See Jarosz v.
Palmer, 436 Mass. 526, 530 (2002) (“[A] judge may take judicial notice of the court’s records in a related action.”). They reflect that Souza was charged in the Quincy District Court on August 13, 2023 with trafficking 100 grams or more of cocaine, and two counts of distribution of a Class B controlled substance; and on September 14, 2023 with distribution of a Class B controlled substance. A nolle prosequi was filed in both Quincy District Court cases on February 8, 2024 because Souza had been indicted.
            [3]        Det. Gervasi did not testify at the hearing. I do not know where he was located during the surveillance and I am not aware of any observations he made during the surveillance outside the Next Page Café bearing on the issues before me.
 
                                                            -2-
 
            While he was parked in this location, sometime after 6 p.m., Det. Sgt. Donahue saw Souza exit the Next Page Café and get into the driver’s seat of the VW SUV. Souza was not using a cellphone. In fact, Souza was not carrying anything in either of his hands. Det. Sgt. Donahue did not observe Souza looking around or engaging in any furtive or suspicious movements.
            A few minutes later, a male, who Det. Sgt. Donahue did not recognize but who was later identified as Corey Meagher (“Meagher”), walked over to the VW SUV. Det. Sgt. Donahue first saw Meagher when he was in the vicinity of the vehicles parked between Det. Sgt. Donahue and the VW SUV. Det. Sgt. Donahue did not see Meagher get out of a vehicle and, other than seeing him for the first time in the area of the vehicles parked in front of him, Det. Sgt. Donahue could not say where Meagher had come from. Det. Sgt. Donahue did not know if Meagher had been in the Next Page Café. Det. Sgt. Donahue did not see Meagher on or handling a cellphone, did not see Meagher carrying anything, and did not see Meagher act in a furtive or suspicious manner.
            Meagher got into the VW SUV, but did not close the door completely. Meagher stayed in the VW SUV for a short time (about 10 seconds), before getting out and walking over to a vehicle parked somewhere between Det. Sgt. Donahue and the VW SUV, but not the vehicle that was immediately in front of Det. Sgt. Donahue’s vehicle. The police did not see anything in Meagher’s hands before he entered the VW SUV or after, saw nothing exchanged between Souza and Meagher, did not see Meagher put his hands into his pockets or take any action to conceal anything from view, and did not see Souza or Meagher in possession of or counting any money.
            Both vehicles – the VW SUV and Meagher’s vehicle – then drove away in different directions. The VW SUV drove south on Middle Street. Meagher drove north. Det. Sgt. Donahue
 
                                                            -3-
 
believed that an illegal drug transaction may have occurred, but he did not see it happen. Det. Sgt. Donahue and Det. Gervasi decided to follow Meagher’s vehicle.
            Once behind Meagher’s vehicle, Det. Sgt. Donavan recognized the license plate of the vehicle Meagher was driving as belonging to a vehicle that had been observed at Souza’s residence during the earlier investigation. Det. Sgt. Donahue or Det. Gervasi radioed for a Weymouth police officer in a marked cruiser to pull over the vehicle Meagher was driving.[4] Two or three minutes later, two officers stopped that vehicle. Det. Gervasi arrived at the site of the stop just behind the marked cruiser. Det. Sgt. Donahue arrived soon after. The driver of the vehicle was identified as Meagher.[5]
            Det. Gervasi then proceeded to question Meagher, as reflected on the detectives’ body- worn cameras. A fairly accurate transcript of the questioning of Meagher is included in the Commonwealth’s Supplemental Opposition to Motion to Suppress (Aug. 1, 2025) (Docket #11). During the questioning, Meagher said that he had just come from the Next Page Café, and that he had met there with a buddy from work named Ceasar. The police had no information that Souza went by, or was known by, the name or nickname Ceasar.
            Det. Gervasi then asked Meagher to get out of his car. Meagher got out of his car as directed and the detective had him walk to the back of his vehicle. Det. Gervasi then asked Meagher if he had anything on him that the police should know about. Meagher said “in the car” near “the shifter.” Det. Sgt. Donahue retrieved from the center console of Meagher’s vehicle a plastic baggie containing a substance believed to be cocaine. Det. Gervasi then read Meagher his
 
--------------------------------------------
 
            [4]        The constitutionality of the stop of Meagher’s vehicle is not before me.
            [5]        Shortly before Det. Gervasi arrived at the driver’s side of Meagher’s vehicle, the uniformed officer who made the stop approached the driver’s side. Although it appears that that officer requested the driver’s license and registration, I cannot determine that from the testimony or the bodycam footage introduced during the hearing.
 
                                                            -4-
 
Miranda warnings, and asked Meagher what he had bought. Meagher said he bought “a small bag” from “Ceasar” for $80 and that he does not work with Ceasar.[6] The police then put Meagher in handcuffs and transported him to the Weymouth police station for booking. This was shortly before 7 p.m. Notably, the police did not ask Meagher where he was when he purchased the drugs, whether he had purchased the drugs while in the VW SUV, who he had met inside the VW SUV, whether he had been inside the Next Page Café, whether he used a phone number to arrange the purchase of drugs (and, if so, what that phone number was), or whether he could describe Ceasar’s appearance or clothing.
            The police did not follow Souza from the Next Page Café and did not know where Souza went after leaving the Next Page Café. In fact, the police did not know where Souza or the VW SUV were for the next 2 hours and 25 minutes, from about 6:45 p.m. to about 9:10 p.m. The police did not apply for an arrest warrant for Souza or a search warrant for the VW SUV.
            Instead of seeking a warrant, after Meagher’s arrest, Det. Sgt. Donahue or Det. Gervasi notified other Weymouth police officers on duty that they had probable cause to arrest Souza and they engaged other detectives to locate Souza and arrest him. Officers set up surveillance near Souza’s home on Lake Street. Sometime around 9:10 p.m., the police located the VW SUV on Lake Street. Ginger Fall (“Fall”), Souza’s girlfriend, was driving the VW SUV. Souza was in the front passenger seat of the vehicle. Fall drove the VW SUV into a driveway at 160 Lake Street, which was private property next to 166 Lake Street and owned by the same person who owned 166 Lake Street. The police immediately pulled up, took Souza out of the VW SUV, placed him under arrest, and put him in handcuffs.
 
--------------------------------------------
 
            [6]        When Det. Gervasi asked Meagher directly whether the name was “Ceasar or Souza,” Meagher responded “Ceasar.”
 
                                                            -5-
 
            Det. Sgt. Donahue, who arrived a few minutes later, gave defendant Miranda warnings and searched the VW SUV. Neither Fall, nor Souza, consented to a search of the VW SUV. During the search, Det. Sgt. Donahue seized a cellphone from the front passenger seat of the VW SUV, which Fall identified as belonging to Souza. Det. Sgt. Souza manipulated the phone so the screen lit up, showing a photo of Souza and his son. Det. Sgt. Souza swiped on the screen and switched the phone into airplane mode.
DISCUSSION
            Souza challenges his warrantless arrest and the search of the VW SUV incident to his arrest. As an initial matter, the police were justified in stopping the VW SUV to conduct an investigatory motor vehicle stop, which required the police only to have a “reasonable suspicion, based on specific, articulable facts and reasonable inferences therefrom” that Souza, who was riding in the vehicle, had committed a crime. Commonwealth v. Anderson, 461 Mass. 616, 621, cert. denied, 568 U.S. 946 (2012) quoting Commonwealth v. Alvarado, 423 Mass. 266, 268 (1996). Specifically, the police had observed what might have been a drug transaction outside the Next Page Café and, despite the fact that Meagher identified Ceasar – not Souza – as the person from whom he had purchased the cocaine, they had a basis reasonably to suspect that the drugs actually had been sold by Souza. “However, reasonable suspicion justifies only a Terry-type investigative stop, not an arrest.” Commownealth v. Pridgett, 481 Mass. 437, 441-442 (2019).
            Here, the police did not simply conduct an investigatory motor vehicle stop of the VW SUV. Instead, they stopped the VW SUV to arrest Souza without a warrant. “Where, as is the case here, an arrest and attendant search are made without a warrant, the Commonwealth bears the burden of establishing that the actions of the police met constitutional standards;” that is, that the “arrest upon which a search is undertaken be based on probable cause.” Commonwealth v.
 
                                                            -6-
 
Santaliz, 413 Mass. 238, 240 (1992). See Commonwealth v. Soto, 104 Mass. App. Ct. 806, 809 (2024)
            “Probable cause to arrest exists where the facts and circumstances in the arresting officer’s knowledge and of which he or she has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in believing that an offense has been or is being committed.” Commonwealth v. Griffin, 79 Mass. App. Ct. 124, 127-128 (2011), quoting Commonwealth v. Williams, 422 Mass. 111, 119 n.11 (1996). In the context of “an illegal drug transaction,” “[p]robable cause to arrest . . . may be established where experienced narcotics officers observe ‘a sequence of activity consistent with a drug sale at a place notorious for illicit activity in narcotics.’” Commonwealth v. Miller, 105 Mass. App. Ct. 1120, 2025 WL 970870 at * 1 (Mar. 31, 2025) (Rule 23.0 decision), quoting Commonwealth v. Stewart, 469 Mass. 257, 262 (2014). Accord Santaliz, 413 Mass. at 240-242.
            The police lacked probable cause to arrest Souza. When the police stopped and arrested Souza, they knew that he had previously been investigated – and was being prosecuted – for street-level drug distribution and they knew he had met briefly with a man later found to be in possession of cocaine. The police, however, only observed the two people meeting briefly in a vehicle outside the Next Page Café. Such a meeting was entirely consistent with wholly innocuous activity. They observed no hand-to-hand exchange, no furtive or suspicious movements, no money exchanged or counted, no cellphone use, and no expectant looking around or scanning of the area.
            In contrast to cases like Santaliz and Miller, the police did not observe Souza and Meagher exchange or handle anything. Cf. Santaliz, 413 Mass. at 241 (“a taxicab pulls up, the defendant takes an object from Torrez,” which had “been hidden in Torrez’ waistband,” “and
 
                                                            -7-
 
walks to the cab where [in silence] he hands the object to the passenger who in turn hands him money” and “the encounter occurs in a place known to the police as a place of high incidence of drug traffic”); Miller, 2025 WL 970870 at ** 1-2 (numerous prior complaints of drug activity at location under observation, car parked in suspicious location given availability of other more convenient parking, defendant gave meaningless ride to known drug user, drug user seen handling backpack in vehicle, defendant later denied meeting with known drug user).
            Moreover, Meagher’s statements prior to his arrest provided no link between the drugs found in his vehicle and the VW SUV or its occupant. Meagher said that he bought the cocaine in his possession from Ceasar. He did not say when he purchased it, whether he bought it while he was in the VW SUV, or who he met in the VW SUV. He did not give a physical description of Ceasar. In fact, the police who stopped and questioned Meagher did not ask him anything about the VW SUV.
            The specialized training of a police officer is not a substitute for factual observations upon which a trained police officer may base probable cause that a particular interaction involved the surreptitious distribution of drugs. Compare Commonwealth v. Kearse, 97 Mass.
App. Ct. 297, 301-302 (2020) (“A quick hand shake in a high crime area between individuals unknown to the police, even when viewed by an experienced investigator, standing alone, does not provide more than a hunch that a drug transaction occurred . . . The fact that [the officer]
was an experienced drug investigator, while relevant to an assessment of reasonable suspicion, is not a substitute for details about how drug transactions occur based on that experience.”). Here, in contrast even to Kearse, the police did not see any physical contact – let alone any exchange –
between Souza and Meagher.
 
                                                            -8-
 
            “[T]he legality of a search incident to arrest depends on the legality of the arrest.” Soto, 104 Mass. App. Ct. at 809. Here, where there was no probable cause to arrest, the search of the VW SUV was also constitutionally infirm. Moreover, the police did not have probable cause to believe that the VW SUV contained contraband. The police had no information about the use of the VW SUV other than their observation outside the Next Page Café. They had no idea where the VW SUV had been in the two plus hours since they had seen it leave the vicinity of the Next Page Café. The fruits of the arrest of Souza, and the search of the VW SUV, must be suppressed.
ORDER
            Defendant’s Motion to Suppress Evidence (Docket #7) is ALLOWED.
Dated:
/s/Peter B. Krupp
Justice of the Superior Court
August 28, 2025